GLICKFIELD *v.* STATE

[No. 46, October Term, 1953.]

*Decided December 10, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ignatius J. Keane* and *Joseph A. DePaul,* with whom was *Charles E. Ford* on the brief, for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Carlyle J. Lancaster, State's Attorney for Prince George's County,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was convicted of attempted bribery of a football player in a trial before the court without a jury, and sentenced to pay a fine of $1,000 and to serve an indeterminate sentence of 18 months. Error is first alleged in the overruling of his motion to dismiss the indictment.

The indictment charged that Glickfield on October 23, 1952, "did unlawfully and corruptly offer to Thomas E. Cosgrove, who was then and there a player on the University of Maryland football team and a participant in an athletic contest between the University of Maryland and Louisiana State University, held on the 25th day of October, 1952, at College Park, Prince George's County, Maryland, the sum of $1,000 in an attempt to bribe the said Thomas Cosgrove to control the score in the said athletic contest * * *." The motion to dismiss was on the ground that Section 30, Article

27, of the 1951 Code, upon which the indictment was based, is so vague, indefinite and ambiguous that it cannot meet constitutional requirements.

Section 30, Article 27, of the 1951 Code, as enacted by Chapter 612, Acts of 1939, provides:

"Any person or persons who shall bribe or attempt to bribe any persons participating in or connected in any way with any athletic contest held in this State shall be deemed guilty of bribery * * *."

It may be noted that Section 31, Article 27, of the 1951 Code, as enacted by Chapter 67, Acts of 1947, makes it a misdemeanor for any participant in an athletic contest to accept a "bribe to alter the outcome" of said athletic contest. Thus, in the case of the taker, as distinguished from the giver, of a bribe in connection with an athletic contest, the purpose of the inducement is more specifically defined. However, we think the difference in phraseology is immaterial, for the words as to alteration of outcome are implicit in the word "bribe." A typical definition of the word is that found in the Oxford English Dictionary: "To influence corruptly, by a reward or consideration, the action of (a person) ; to pervert the judgment or corrupt the conduct by a gift." In the context, we think the bribery of a player refers to a corrupt influence upon his performance with reference to the outcome, in this case, the score.

The words of a statute must be accorded the meaning naturally given them in ordinary usage. *Wimpling v. State*, 171 Md. 362, 370. It is commonly understood that players are under at least a moral duty to exert their honest efforts for their side. Indeed, it might be said that the sporting concept of fair play is not only commonly understood but is one of the basic tenets of Anglo-American jurisprudence. We need not now consider whether a mere inducement to play harder would amount to a bribe. Here we have an allegation that money was offered "to control the score." The testimony was that the specific offer was conditioned upon Cosgrove, in the key position of offensive center,

playing in such a fashion that the University of Maryland would not win the forthcoming game by more than 20½ points, this being the spread upon which certain gambling syndicates were operating.

The appellant argues that the statute is fatally vague and contradictory because at common law the crime of bribery connoted the corrupt influencing of official action only, and a participant in an athletic contest is in no sense a public official. It is true that the common law offense was so limited. *Wharton, Criminal Law* (12th ed). Vol. 3, p. 2522 defines the crime of bribery at common law as "corruptly· tendering or receiving a price for official action." It was limited under the previous statute (Section 29, Article 27, Code of 1951) to specified public officers or public employees in the performance of their official duties. Cf. *Cunningham v. State,* 190 Md. 578.

But we perceive no reason why the legislature cannot remove the limitation, and in this instance we think it has done so by extending the offense to participants in athletic contests, whose duty to perform with honesty and integrity is analogous to the duty imposed by law upon persons holding public office or performing a public function.

It is of course true that a statute so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application, violates the constitutional guarantee of due process. *Martin v. State,* 203 Md. 66, 77, 98 A. 2d 8, 13, and cases cited. But we cannot suppose that a person of ordinary intelligence reading this statute would be in doubt as to the nature of the acts condemned. Nor do we entertain any doubt that the judgment in question will fail to protect the defendant from a subsequent prosecution for the same offense, under the rule restated in *Shelton v. State,* 198 Md. 405, 409.

The rule of strict construction cited in *Wanzer v. State,* 202 Md. 601, 611, 97 A. 2d 914, 918, does not require that we give an unnatural or forced construction to

the statute in order to thwart the clear legislative intent to create a new crime analogous to an old one. We find no error in the ruling on the motion to dismiss.

The appellant contends that the court committed reversible error in excluding one of his counsel from the court room. Before the taking of testimony, Mr. Keane, of counsel for the accused, requested that all witnesses be excluded from the courtroom. At this point Mr. Ford, of counsel for the accused, informed the court that it might become necessary for him to take the stand, and said: "I understand it is discretionary with the Court as to whether I stay or not. I have no particular opinion on the point, but I think I should call it to your Honor's attention before it happens." In response to an inquiry from the court, the State's Attorney said: "I think if the witnesses are going to be excluded, and Mr. Ford is going to be a witness, he ought to stay outside the courtroom, too." Mr. Ford stated: "I certainly will comply." The witnesses were excluded, including Mr. Ford, who did, in fact, testify. If it can be said that the exclusion of Mr. Ford was as a result of the court's ruling, it is clear that there was no objection by Mr. Keane or Mr. Ford. It is quite possible that if it had been represented to the court that Mr. Ford's presence was necessary for a proper presentation of the case, he might have been permitted to remain. In the absence of objection, it is unnecessary to consider whether under other circumstances exclusion of counsel would be an abuse of discretion. Cf. *Jackson v. State,* 115 S. W. 262 (Tex.), *Berberet v. Electric Park Amusement Co.,* 3 S. W. 2d 1025 (Mo.), and *Randall v. State,* 36 S. E. 2d 450 (Ga.).

The appellant contends that reversible error was committed in allowing the State's Attorney to interrupt the cross-examination of the witness, Cosgrove, and to confer with the witness. The incident arose in this fashion. Cosgrove was asked in cross-examination whether he had not stolen certain examination papers. Over objection by the State's Attorney, the court ruled that

the question was material "to the extent that it may affect his credibility." The witness refused to answer. At this point the State's Attorney asked: "Could we have a five-minute recess and I talk to the witness, your Honor?" The court said, "Yes, you may talk to him." After a short recess the witness returned to the stand. The question was repeated and he said: "Well, due to football, more or less, missing classes, I fell behind in one of my courses, and in my sophomore year I was with two other fellows and we entered the building. It was open, and we went in to look for the test. And we were reprimanded for it."

The State's Attorney had a perfect right to object to the materiality of the question propounded, and when the court ruled that the question must be answered, his request for a conference was obviously designed to urge compliance with the court's ruling, which might otherwise have put the witness in contempt. As a result, the witness did answer and admit the action with which he had been charged. It is difficult to see how the appellant was injured by the action of the State's Attorney. But in any event the request for a recess and conference was not objected to by the appellant, so that the point was not properly preserved.

Finally, the appellant contends that the court erred in placing any credence upon the testimony of Cosgrove, in view of his admission that he disliked Glickfield, his dubious credibility, and his admission that, upon instructions of his coach and others to whom he reported the attempted bribe, he and another player engaged in an unsuccessful attempt to arrange another meeting with Glickfield, in order to deceive him into believing that they were willing to accept his proposition and involve him further. The meeting never took place. We find no merit in the contention. The State points out that the appellant has not printed in his appendix the testimony of other witnesses tending to corroborate Cosgrove and support the conviction. In

any event, it is clear that we cannot substitute our views as to credibility for that of the trial court. On the record we cannot find that the verdict of the court was clearly erroneous. Cf. *Adams v. State,* 202 Md. 455, 463, 97 A. 2d 281, 285, and *Edwards v. State,* 198 Md. 132.

*Judgment affirmed, with costs.*