GREENWALD *v.* STATE

[No. 50, September Term, 1959.]

236

*Decided November 23, 1959.*

*Motion for rehearing filed December 22, 1959, denied and opinion modified January 12, 1960.*

*Petition filed January 19, 1960, to stay execution of mandate, and Order of Court filed the same day staying execution for 30 days pending appeal to U. S. Supreme Court.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*H. Albert Young* and *Bruce M. Stargatt,* with whom were *Floyd J. Kintner, William B. Evans* and *Morford, Young & Conaway* on the brief, for the appellant.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Albert Roney, Jr., State's Attorney for Cecil County,* and *Henry P. Turner, State's Attorney for Talbot County,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

When Jacob J. Greenwald (the defendant), a medical doctor, was convicted by a jury in Talbot County—to which this case and others had been removed for trial—of violating a law concerning the marriage of minors and sentenced to three years in the Maryland Penitentiary, the defendant, claiming several errors, appealed.

On July 14, 1958, the grand jury of Cecil County (in

which Elkton, the county seat, has been a Gretna Green for years) returned eighty-five indictments against the defendant. Forty-two of them, including this case, charged the defendant with perjury. The other forty-three, of which *Greenwald v. State,* 221 Md. 245, 157 A. 2d 119 (1960), is one, charged the defendant and E. Leland Ott with a conspiracy to commit the offenses charged in the perjury indictments.

In substance the defendant was charged in this case with having, on February 6, 1958, unlawfully and knowingly made a material false statement by certifying that he had examined a girl and found her to be pregnant, when in fact he had not made a physical examination to determine pregnancy, and when in fact the girl was not at that time pregnant, in order to assist the girl and her boy companion to procure a license to marry.

Code (1957), Art. 62, § 11, provides in part as follows:

"(a) *Fine.*—Any person violating the provisions of §§ 9 and 10 [concerning the marriage of minors, which, *inter alia,* require the assent of the parent or guardian if the girl is under sixteen or the boy is under eighteen, and then provide that a marriage license may be issued without the required consent if the putative father is over sixteen, on the certificate of a licensed physician presented with the application to the effect that the girl is pregnant or has given birth to a child] shall be guilty of a misdemeanor and upon conviction thereof, shall be subject to a fine of not less than $25.00 and not more than $250.00.

"(b) *False statement.*—Any person who shall knowingly make any material false statement to procure, or to assist any other person to procure, any license or marriage ceremony in violation of the provisions of this article, * * * shall be guilty and punished for perjury."

It is obvious that the indictment in this case was based on § 11(b), *supra,* and the lower court in its charge so advised the jury.

The facts are not controverted. On February 6, 1958, a boy, who was then under eighteen, went to Elkton in the company of a boy friend and their respective girl companions for the purpose of getting married. The boy went to the clerk's office and made application for a marriage license. After the application had been made he went by taxicab to the defendant's office with the other boy. The girls did not accompany them. The defendant was at his desk and as they approached him he stated that he understood their girls were pregnant. They replied in the affirmative, which was untrue so far as the boy's bride-to-be was concerned, but may have been correct so far as the prospective wife of the boy friend was concerned. When asked by the defendant, both boys informed him that the girls were three and one-half months pregnant. The defendant also inquired as to the girls' names and residences. When this information had been supplied, the defendant filled out two certificates and gave them to the boys. The certificate given to each boy certified that the defendant had examined his girl companion and had found her to be three and one-half months pregnant. The entire visit to the office lasted about five minutes. Four days later, the boy went to the clerk's office again, gave the clerk the pregnancy certificate he had received from the defendant and procured a marriage license on the basis of the certificate. The boy and girl were married the same day.

On this appeal, the defendant contends (i) that § 11(b), *supra,* does not apply to unsworn statements; (ii) that, if it does, then it is unconstitutional; (iii) that even if the section does apply to unsworn statements and is constitutional, the defendant ought to have been punished under § 11 (a), *supra;* and (iv) that his motion to dismiss the indictment should have been granted because the indictment is defective for the reason it failed to allege wilfulness.

### (i) and (ii)

Section 11(b), *supra,* applies to unsworn statements and is constitutional. The defendant urges that because the true meaning of the statute is in doubt a strict construction is required, that the statute is patently ambiguous because it re-

quires punishment for perjury without specifying that the prescribed material false statement had to be made under oath, and, therefore, that the statute should be construed to prescribe false unsworn statements. We do not agree with any of the defendant's premises. On the contrary, it cannot be disputed that the Legislature, in enacting § 11 [of Art. 62], *supra*, provided, by the terms of § 11 (a) that violations of §§ 9 and 10 were misdemeanors subject to a fine of $25 to $250. But, at the same time, by the terms of § 11(b), the Legislature created an offense analogous to perjury prohibiting the making of a material false statement in connection with the procurement of a marriage license or ceremony, and then provided an oath-substitute, which though novel is not prohibited. The term "oath" is often used in its broadest sense "to include all forms of attestation by which a party signifies that he is bound in conscience to perform the act faithfully and truly." 3 Bouv. Law Dict., p. 2388 (8th ed. 1914), quoted in *State v. Gay,* 59 Minn. 6, 60 N. W. 676 (1894). See also Maryland Rule 5 c. Viewed in this light, the terms of § 11(b) are clear and definite despite the fact they are expressed in somewhat inartificial language. The legislative history unerringly points to the fact that the word "of" [1] was inadvertently omitted from the statute, but with or without the absent word there can be no doubt that the offense condemned by the statute as stated above is in the nature of perjury. However, by the terms of § 11(b), the very making of a material false statement, even though not under oath, has been substituted for the oath usually required to make a false statement perjurious. Furthermore, there is not the slightest doubt that the Legislature had the power to define what acts shall constitute criminal offenses and what penalties shall be inflicted on offenders, the only limitation being that such enactments shall not infringe on constitutional rights and privileges. *Glickfield v. State,* 203 Md. 400, 404, 101 A. 2d 229, 231 (1953); *State v. Seney Company,* 134 Md. 437, 107 A. 189 (1919); 14 Am. Jur., *Criminal Law,* § 16.

---

1. When the omitted word is restored, the statute provides that offenders thereof "shall be guilty [of] and punished for perjury."

The further argument to the effect that the false statement contemplated by § 11(b), *supra,* has reference to something more than the certificate of a physician as to pregnancy—which was based on the requirement of § 9(a), *supra,* that the signed affidavit to the assent of a parent or guardian should be sworn to or affirmed but did not make the same requirement as to the certificate of a physician—is also without merit for the simple reason that the language of § 11(b) includes all material false statements whether sworn or unsworn.

Obviously from what has been said there is no reason why the Legislature could not remove the requirement of an oath, and in this instance it has explicitly and effectually done so by providing a non-oath substitute for it as it has done several times before.[2] In this connection, it is interesting to note that an affirmation—which is without doubt the earliest of such substitutions in this or any other jurisdiction—is by statute or rule defined as a solemn [*i.e.,* according to strict form or formal] declaration made under the penalties of perjury that a certain statement of fact is true. See Rule 5 c, *supra.* All such substitutions, however, either directly or impliedly, are made the equivalent of an oath. It is implicit in § 11(b), *supra,* that the oath-substitute is the equivalent of an oath.

With respect to the question of constitutionality, the defendant argues that § 11(b), *supra,* is vague and indefinite and that the statute should be construed as an inadvertent legislative attempt to amend the state constitution. Again we do not agree. As to the first contention, we need only repeat what we have already said that the statute is neither vague nor indefinite and add that it does not affront the constitutional guarantees of due process. This is so because it is explicit enough to enable a person of ordinary intelligence to ascertain with a fair degree of certainty what it prohibits and

---

2. See, for example, Code (1957), Art. 2B, § 198 [false statement under alcoholic beverage laws]; Art. 81, § 5 [false report required by revenue and tax laws]; and Art. 85A, §§ 13, 17 [false statement of employees under sedition and subversive laws].

what conduct on the offender's part will render him liable to its penalties. *McGowan v. State,* 220 Md. 117, 125, 151 A. 2d 156, 160 (1959). The further contention that the statute is vague because the jury had to guess at its meaning and seemingly differed as to its application is likewise without substance. Cf. *McGowan v. State, supra.* The claim is that the forelady's request for additional instructions at the conclusion of the trial clearly demonstrated that the jury was confused—if it found the defendant guilty—as to whether the verdict should be guilty of perjury under § 11(b), or guilty of a misdemeanor under § 11(a). The lower court quite properly informed the jury that its verdict should be either guilty or not guilty since the court had already informed the jury in its general instructions in no uncertain words that the indictment charged the defendant with a violation of § 11(b). It is unfortunate that the court read the provisions of § 11(a) to the jury in that the defendant was not charged under that section, but, since it did so, the additional comments made by the court in an effort to alleviate the obvious confusion might have been more explicit. However, be that as it may, there was no error because the jury's inquiry had reference to the form of the verdict only, as to which the court's additional instruction was ample. Moreover, the record is clear that the forelady—after the colloquy between her, the court and counsel for the defendant—stated that she *then* understood the court's instruction, all of which transpired before the jury had retired to consider its verdict.

The defendant also submitted a very strained argument that to call the making of a false statement not under oath by the name of perjury and to provide for its punishment as such would amount to a legislative attempt to amend the constitution as to disqualification from voting because of a conviction for infamous crime. This argument was to the effect that perjury is an infamous crime of which a false oath was an essential element at common law; that the disfranchisement provision of Art. I, § 2, of the Constitution of this State based upon a conviction for an infamous crime operate only with respect to crimes which were infamous at common law, [citing *State v. Bixler,* 62 Md. 354 (1884)]; that to denomi-

nate the making of a false statement not under oath as perjury undertook to make an infamous crime out of an offense which was not such at common law; and therefore violates the constitutional provision referred to. This conclusion is a clear *non sequitur*. Even if we assume that no newly created crime could be an infamous crime because it was not known to the common law, the fact that the penalty of disfranchisement may not be constitutionally possible does not remove the proscribed act from the category of criminal conduct, which is subject to punishment under the statute denouncing the offense. What the defendant's voting rights may be in the future are not before us now.

### (iii)

The sentencing of the defendant under § 11(b), *supra,* was proper. The defendant contends—because the indictment made no reference to § 11(b)—that he ought to have been punished under § 11(a). Again, we do not agree. The indictment in this case, substantially in the language of the statute, unquestionably charged the defendant with a violation under § 11(b), and, having been convicted thereunder, he was subject to the punishment therein provided. The fact that the court—in denying the defendant's motion at the beginning of the trial to require the State to elect between § 11(a) and § 11(b)—remarked that the matter would be considered if and when the question of punishment was reached, did not commit the court to fine the defendant rather than imprison him. Nor was it error to resolve the question as it did after the defendant had been convicted. Moreover, we think it is clear that the statute did not provide different penalties for the same offense. On the contrary, the statute permits the grand jury [on a presentment and indictment] or the state's attorney [on an information] to determine whether to prosecute an alleged offender for a violation of the provisions of the statute not included in § 11(b) or for the more serious offense of perjury under § 11(b) when it appears that a material false statement has been knowingly made.

(iv)

Lastly, the indictment was not defective because it failed to allege wilfulness. The defendant's contention that his pre-trial motion to dismiss the indictment should have been granted is without merit. Since it is sufficient if statutory offenses are charged in the language of the statute creating them, the indictment in this case charging the defendant with "knowingly," instead of "wilfully," making a material false statement was sufficient to state the offense charged. *Parkinson v. State,* 14 Md. 184, 198 (1859); *Gibson v. State,* 54 Md. 447, 451 (1880); *State v. Lassotovitch,* 162 Md. 147, 159 A. 362 (1932). Moreover, it has been held that the word "wilfully" is of similar import to the word "knowingly" and is the same in substance and effect. [*Hutchman v. State,* 61 Okla. Crim. 117, 122, 66 P. 2d 99, 102 (1937)]; and that one may be the equivalent of the other [*McClure v. State,* 157 Miss. 800, 805, 128 So. 764, 765 (1930)].

The judgment must be affirmed.

*Judgment affirmed, the appellant to pay the costs.*