# IN RE: LEROY T.

[No. 81, September Term, 1978.]

*Decided July 23, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Alfred L. Scanlan, Jr., Assigned Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Geraldine Kenney Sweeney, Assistant Public Defender,* on the brief, for appellant.

*Paul T. Cuzmanes, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This case presents the issue of whether a clause in a Baltimore City ordinance, barring the possession of certain articles, is so vague that it violates Art. 24 of the Maryland Declaration of Rights [1] and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The facts are not complex. Defendant Leroy T., a 13 year old juvenile, was in a vacant lot in the 700 block of West Saratoga Street in the city at 11:40 p.m. A Baltimore City police officer testified that he saw Leroy unsuccessfully attempt to open the door of an automobile parked on the lot. Defendant then approached a second car, placed a key in its lock, removed a pair of pliers from his pocket and, without success, attempted to turn the key. When Leroy noticed the policeman, he dropped both the pliers and the key and began to walk away.

Leroy T. was arrested and charged with being delinquent in that he "unlawfully did possess, with the purpose of committing an unlawful act, a criminal tool to wit: pliers" in violation of Baltimore City Code (1976), Art. 19, § 9 (a) (5). For some unexplained reason, he was not charged with attempting to break into the automobile. At the adjudicatory hearing before a master, the defendant asserted that the ordinance was unconstitutional under the void for vagueness principle. The motion was denied, and Leroy T. was adjudicated delinquent. After a dispositional hearing, he was committed to an institution for juveniles. The defendant filed

---

1. Formerly Art. 23. The Due Process Clause of the Maryland Declaration of Rights was renumbered by a constitutional amendment in 1978.

a timely exception to the action of the master, limited to the denial of the motion to dismiss. The exception was overruled, and an appeal was taken to the Court of Special Appeals, limited to the issue of whether Baltimore City Code, Art. 19, § 9 (a) (5) is unconstitutionally vague. This Court issued a writ of certiorari prior to any proceedings in the Court of Special Appeals.

The challenged statute, Art. 19, § 9, provides in relevant part (emphasis supplied):

> "(a) No person shall knowingly possess or have under his control any device, instrument or article listed herein, with purpose to do any unlawful act:
> 1. Detached Ignition Switch
> 2. Jumper Wire Device
> 3. Key Cutter
> 4. Slidehammer
> 5. Any other device, instrument or article *commonly used,* designed or specially adapted for criminal use."

Although the ordinance goes on to define the specific tools listed in subsections 1 through 4, there is no definition for the more general types of devices encompassed by subsection 5.[2] Because it is clear that the ordinary pliers carried in this case were not designed or specially adapted for criminal use, and

---

2. The remainder of the statute states:

"(b) For the purpose of this ordinance, the following terms, phrases, words and their derivation shall have the meaning given herein:

(1) 'Detached Ignition Device' means any ignition cylinder capable of completing the electrical circuit in the ignition system of an automobile.
(2) 'Jumper Wire Device' means any electrical connecting device designed to complete the electrical circuit in the ignition of an automobile.
(3) 'Key Cutter' means any key-making device capable of cutting or punching out keys.
(4) 'Slidehammer' or 'Slaphammer' means a device with a movable weighted sleeve on a rod used to remove automobile locks.

"(c) Any person violating the provisions of this subtitle is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than five hundred dollars ($500.00) or imprisoned for not more than six months, or both."

to come within the statute must be encompassed by the "commonly used . . . for criminal use" language, the appellant has limited his attack upon the statute to the "commonly used" category. Appellant contends that the phrase "or article commonly used . . . for criminal purposes" is unconstitutionally vague because it gives inadequate notice of the act prohibited and provides insufficient adjudicative guidelines.

In *Bowers v. State,* 283 Md. 115, 389 A. 2d 341 (1978), we discussed the void-for-vagueness doctrine extensively. Judge Levine, writing for the Court, observed that "[t]he cardinal requirement is that a penal statute 'be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" 283 Md. at 120, quoting *Connally v. General Construction Co.,* 269 U. S. 385, 391, 46 S. Ct. 126, 127, 70 L. Ed. 322 (1926). In *Bowers,* the Court delineated the following standards for determining whether a statute is unconstitutionally vague (283 Md. at 120-121):

> "In assessing the constitutionality of a statute assailed as overly uncertain either in respect of the acts it purports to prohibit or the persons to whom it applies, courts typically consider two basic criteria. The first of these may be described as the fair notice principle and is grounded on the assumption that one should be free to choose between lawful and unlawful conduct. Due process commands that persons of ordinary intelligence and experience be afforded a reasonable opportunity to know what is prohibited, so that they may govern their behavior accordingly. . . . Since 'vague laws may trap the innocent by not providing fair warning,' *Hynes v. Mayor of Oradell,* 425 U. S. at 622; *Grayned v. City of Rockford,* 408 U. S. at 108, no one should be subject to criminal responsibility for conduct which he could not reasonably understand to be prohibited. *Rose v. Locke,* 423 U. S. 48, 49, 96 S. Ct. 243, 46 L.Ed.2d 185 (1975); *United States v. Harriss,* 347 U. S. at 617; *Governor v. Exxon Corp.,* 279 Md. 410, 454,

370 A. 2d 1102, 372 A. 2d 237 (1977), *aff'd,* 437 U. S. 117, 98 S. Ct. 2207, 56 L.Ed.2d 91 (1978).

"A statute may also be stricken for vagueness if it fails to provide legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others whose obligation it is to enforce, apply and administer the penal laws."

In determining whether the prohibited conduct is sufficiently delineated, the Court went on to say in *Bowers* (*id.* at 125):

"A statute is not vague when the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning. . . ."

*See Rose v. Locke,* 423 U. S. 48, 50, 96 S. Ct. 243, 46 L.Ed.2d 185 (1975).

We agree with the appellant that the phrase "commonly used" in the context of this ordinance is unduly vague because it fails to afford fair notice of the prohibited devices and fails to provide adequate guidelines for enforcement. We recognize that statutes have been upheld in the face of challenges that the term "burglars' tools" is unduly vague. *Goldstine v. State,* 234 Ind. 388, 126 N.E.2d 581 (1955); *Mahar v. Lainson,* 247 Iowa 297, 72 N.W.2d 516, *cert. denied,* 350 U. S. 972, 76 S. Ct. 445, 100 L. Ed. 843 (1956); *State v. Hart,* 200 Kan. 153, 434 P. 2d 999 (1967); *Shafer v. State,* 214 Tenn. 416, 381 S.W.2d 254, *cert. denied,* 379 U. S. 979, 85 S. Ct. 683, 13 L.Ed.2d 570 (1965). More in point, two cases have upheld statutes where it was apparently argued that the term "commonly used" was unconstitutionally vague, *Hogan v. Atkins,* 224 Ga. 358, 162 S.E.2d 395 (1968); *State v. McDonald,* 74 Wash.2d 474, 445 P. 2d 345 (1968), involving, *inter alia,* a flashlight, screwdriver and rope. Nevertheless, we are unable to concur with the decisions in the latter two cases.

During oral argument the State admitted that almost any

common article or instrument imaginable, which might be used by persons in the course of committing unlawful acts, would be encompassed by § 9 (a) (5). However, the State indicated that there were limits, and that some common articles worn or carried, which may be helpful in the course of committing unlawful acts, might be beyond the statute. The State was unable to advance any standard under which it could be determined whether or not any given device was embraced by the term "commonly used."

The State advances the argument that there is a direct relationship between the possession of an article and the requisite intent to perform an unlawful act, such that the vagueness of the phrase "commonly used" is remedied. The State in effect contends that it does not matter what items are prohibited by the statute, because only persons with intent to commit unlawful acts will be punished. To uphold such an argument would be to ignore a basic premise of Anglo-American law that no crime is committed by the mere harboring of evil intent not accompanied by an act, or an omission to act where there is a legal duty to act. *Sherman v. United States,* 10 F. 2d 17 (6th Cir. 1926); *Hunter v. Allen,* 286 F.Supp. 830 (N.D. Ga. 1968); *Rosado v. Martinez,* 369 F.Supp. 477 (D. P.R. 1974); *People v. Belcastro,* 356 Ill. 144, 190 N. E. 301 (1934); *Bucklew v. State,* 206 So.2d 200 (Miss. 1968); *Boliver v. Monnat,* 135 Misc. 446, 238 N.Y.S. 616 (1929); *People v. Walrath,* 279 App.Div. 56, 108 N.Y.S.2d 54 (1951); *State v. Roberts,* 270 N.C. 655, 155 S.E.2d 303 (1967); *Peoples Savings Bank v. Playdium Lanes, Inc.,* 33 Ohio Op.2d 287, 203 N.E.2d 510 (1964); *Graham v. State,* 447 P. 2d 200 (Okl.Cr. 1968); *Booth v. State,* 398 P. 2d 863 (Okl.Cr. 1965); *Perkins On Criminal Law,* Chap. 6, § 1 (2d ed. 1969); LaFave and Scott, *Criminal Law* § 25 (1972); 1 Wharton, *Criminal Law and Procedure* § 65 (12th ed. 1957 and Supp. 1979).

The potential for abuse associated with the challenged language of § 9 (a) (5) is great. "Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections. Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law." *Smith v. Goguen,* 415 U. S.

566, 575, 94 S. Ct. 1242, 39 L.Ed.2d 605 (1974). That the policeman's suspicions in this particular instance may have been correct, because the juvenile was seen committing a different crime, namely attempting to break into an automobile, in no way relieves the vagueness of the statutory provision under which he was charged or lessens its potential for arbitrary and discriminatory enforcement.

While the City of Baltimore may have been attempting to provide coverage for a wide range of burglars' tools, we cannot sanction the breadth of the present ordinance. That portion of § 9 (a) (5) covering "instruments . . . designed or specially adapted for criminal use" would seem to be sufficient to accomplish the city's apparent purposes. Our determination that the "commonly used" phrase of § 9 (a) (5) is unconstitutionally vague does not affect the validity of the remaining portions of the ordinance, in light of the presumption in favor of severability. *O.C. Taxpayers v. Ocean City,* 280 Md. 585, 600-601, 375 A. 2d 541 (1977); *Davidson v. Miller,* 276 Md. 54, 83, 344 A. 2d 422 (1975). The remainder of the statute provides a readily applicable standard whereby the possession or control of any device which is identifiable as an unlawful instrument, either specified in § 9 (a) (1) through (4) or designed or specially adapted for unlawful use under § 9 (a) (5), combined with the requisite unlawful intent, is of itself unlawful.

*Judgment reversed.*
*Costs to be paid by the Mayor and City Council of Baltimore.*