STATE OF MARYLAND *v.* JEFFREY LEVITT

[No. 690, September Term, 1980.]

\* \* \*

STATE OF MARYLAND *v.* NICHOLAS
KOURKOULES

[No. 928, September Term, 1980.]

*Decided March 3, 1981.*

2

The cause was argued before THOMPSON and LOWE, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *John F. Hanson, Assistant State's Attorney for Baltimore County,* on the brief, for appellant.

*Benjamin A. Bronstein,* with whom was *Gary Huddles* on the brief, for appellee Levitt.

*Leslie L. Gladstone* for appellee Kourkoules.

ORTH, J., delivered the opinion of the Court.

The General Assembly has declared it to be the policy of Maryland that "it is necessary to regulate and control the manufacture, sale, distribution, transportation and storage of alcoholic beverages within this State and their transportation and distribution into and out of this State to obtain respect and obedience to law and to foster and promote temperance." Md. Code (1957, 1976 Repl. Vol.) Art. 2B, § 1. In furtherance of that policy, and "for the protection, health, welfare and safety of the people of this State," *id.,* it devised a comprehensive scheme, comprised of the "restrictions, regulations, provisions and penalties . . ." contained in Art. 2B, sometimes hereinafter referred to as the Alcoholic Beverages Law. To enhance the integrity of the scheme and to promote the administration and enforcement of it, various penalties were prescribed for violations of its provisions. Art.

2B, §§ 198-203. Section 198, under the heading "False statements," reads:

> "If any signed statement, report, affidavit, or oath, required under any of the provisions of this article, shall contain any false statement, the offender shall be deemed guilty of perjury, and upon conviction thereof, shall be subject to the penalties provided by law for that crime."

During the forty-eight years since the enactment of the Alcoholic Beverages Law — Acts 1933 (Special Session) Chapter 2 — an appellate court of this State has not had occasion to construe the provisions of § 198 or to determine its constitutionality. These appeals shall call on us to do so.[1]

At the center of each of the two cases before us is an application for renewal of a liquor license. The renewal application is required by § 68 of Art. 2B, which provides, *inter alia,* that "[t]he holder of any expiring license . . . shall [within a designated time] file a written application, duly verified by oath, for the renewal of such license with the official authorized to approve the same." The applications here, addressed to the Board of Liquor License Commissioners for Baltimore County, warn against making a false statement by setting out an "extract" from § 198 which is practically a repetition of its provisions. The applications include a certification by the applicants over their purported signatures that "the facts and information set forth in the application upon which the present license was issued are unchanged." They contain an "Affidavit" in which a notary public certified over his signature and Notarial Seal that the applicants named therein personally appeared before him "and made oath in due form of law that the matters and facts contained in said application are true." Each application was the basis of an indictment filed in the Circuit Court for Baltimore County. The indictments present, respectively, that Nicholas Kourkoules (Appeal No. 928) and Jeffrey Levitt (Appeal No. 690)

---

1. Upon motion of the Attorney General of Maryland suggesting that the two cases *sub judice* present a common issue, *i.e.,* the constitutionality of § 198 of Art. 2B, we consolidated them for oral argument.

4

"did unlawfully make and sign a renewal application for Alcoholic Beverage License to the Board of Liquor License Commissioners for Baltimore County under the provisions of the State Alcoholic Beverage Law, Article 2B, § 68 of the Annotated Code of Maryland, to wit: unlawfully and falsely did certify that the facts and information set forth upon which this license was issued are unchanged, the matters so stated being material, willfully, corruptly, and knowingly false contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

Below this is typed "(Article 2B, § 198—False Statement)."

*The Kourkoulès Case*

Kourkoules filed a motion to dismiss the indictment.[2] The State answered, and the matter was heard and determined by the Circuit Court for Baltimore County (Alpert, J.) prior to trial. The court issued an order granting the motion. From this final order the State appealed. Md. Code (1974, 1980 Repl. Vol.) § 12-302 (c) of the Courts and Judicial Proceedings Article. The issue before us is whether § 198 of Art. 2B is void as repulsive to the dictate of constitutional due process because of vagueness. *See Bowers v. State,* 283 Md. 115, 120, n.5, 389 A.2d 341 (1978).

At the hearing on the motion, Kourkoules argued that § 198 of Art. 2B was unconstitutionally vague because it "did not set forth there must be a wilful rather than a negligent or unknowingly false statement," and because it did not require that the false statement be material.[3] The State's

2. The motion as submitted moved the court to dismiss "the case." In open court it was agreed that the motion went to the dismissal of the indictment, and it was so considered by the court and the parties.

Kourkoules was one of three applicants in the renewal application which was the subject of the indictment returned against him. The application entered the case as a joint exhibit "for the purposes of [the court's opinion]" which accompanied the order granting the motion to dismiss.

3. In his written motion to dismiss the indictment, Kourkoules put it this way: "[The statute] does not purport to require that the 'offender' willingly

position was that the Legislature had made the mere making of a false statement in a signed statement, report, affidavit, or oath, required by the Alcoholic Beverages Law, the crime of perjury; the perjury elements do not "enter into it." The only element, the state urged, is that such a false statement be made and, if it were, the one making it (the offender) committed the crime proscribed.

As we have indicated, note 3 *supra,* § 198 had been declared to be unconstitutional by Raine, C.J. in the Levitt case. Chief Judge Raine found that the statute was unconstitutionally vague because it

> "refers to 'the offender,' without specifying with any particularity the conduct that renders one an offender. It equates the offense with the crime of perjury but refers merely to a signed statement. If such a statement was not under oath, it would not be deemed to be perjury. It refers to a 'report.' If a verbal report was false, would the person making the oral statement be an offender? Does an 'offender' encompass the notary? Is one who utters a false document an 'offender'? All of these questions are the subject of speculation. Is one who makes a false statement believing it to be true, an 'offender.'? "

"There is little doubt," the judge observed, "that the Legislature intended to punish a person who made a false statement in writing under oath." But, the judge opined: "If that were all the Legislature intended, the Statute would have been unnecessary, for the person making the false statement under oath could be charged with the crime of perjury." The judge admonished: "If the Legislature had meant to create a new crime, they should have used specific language such as is found in every other criminal statute to which the Court's attention has been directed."

---

and knowingly make a false statement *(mens rea)* . . . ." The Levitt case had been tried before Raine, C.J., who had issued an opinion in which he declared that § 198 of the Alcoholic Beverages Law was unconstitutional. Kourkoules referred to this opinion in support of his motion.

Judge Alpert adopted the opinion of Chief Judge Raine by reference but disagreed with parts of it. He thought that it was "relatively clear that the Legislature desired to engraft the elements of perjury into this statute, . . ." but he also thought that "it [was] fundamentally clear they failed to do so." This failure, which Judge Alpert believed the Legislature did not intend, left the meaning of the provisions vague, particularly with respect to criminal intent. *Mens rea,* the *judge pointed out, is a necessary element of a crime.* Although "[i]t is within the power of the Legislature, if it sees fit, to dispense with the necessity for a criminal intent, and to punish particular acts without regard to the mental attitude of the doer," such intention must clearly appear. Judge Alpert thought that it did not clearly appear in this statute.

The tenets of the void-for-vagueness doctrine were lucidly set out in *Bowers v. State, supra,* and supported by ample authority.

> "The cardinal requirement is that a penal statute 'be sufficiently explicit to inform those who are sub-ject to it what conduct on their part will render them liable to its penalties.' . . . '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' ... The Fifth and Fourteenth Amendments guarantee that '[n]o one may be required at peril of life, liberty or property to specu-late as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' " 283 Md. at 120 (citations omitted).

"A statute is not vague when the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning." *Id.* at 125.

Two basic criteria should be considered in assessing the constitutionality of a statute assailed as overly uncertain either in respect of the acts it purports to prohibit or the persons to whom it applies. The first criterion is the fair notice principle. Simply put, it is that "[s]ince 'vague laws may trap the innocent by not providing fair warning,' . . . no one should be subject to criminal responsibility for conduct which he could not reasonably understand to be prohibited." *Id.* at 120-121, (citations omitted). The second criterion is the failure to provide legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others whose obligation it is to enforce, apply and administer the penal laws. A statute is not void merely because it allows for the exercise of some discretion on the part of law enforcement and judicial officials, but it must not be so broad as to be susceptible to irrational and selective patterns of enforcement. *Id.* at 121-122.

The general rule is that the constitutionality of a statutory provision challenged for vagueness must be determined strictly on the basis of the statute's application to the particular facts at hand. "Thus, it will usually be immaterial that the statute is of questionable applicability in foreseeable marginal situations, if a contested provision clearly applies to the conduct of the defendant in a specific case." *Id.* at 122. When, however, a criminal statute may, because of imprecise draftsmanship, impact upon fundamental constitutional liberties, particularly the First Amendment guarantees of free speech and assembly, the void-for-vagueness doctrine demands a greater degree of specificity than in other contexts. "Translated, this principle of strict specificity means that where First Amendment values are at least potentially involved, the statute is to be tested for vagueness *on its face." Id.* at 122-123. Since the statute here does not intrude upon the First Amendment guarantees, it is to be tested under the general rule. *See In re Leroy T.,* 285 Md. 508, 511-512, 403 A.2d 1226 (1979), citing and applying *Bowers.* Therefore, the heart of the issue before us is whether, on the basis of the facts at hand, the statute gives adequate notice and has sufficient adjudicative

8

guidelines in respect to the acts it purports to prohibit and to the persons to whom it applies. In other words, whether it is constitutional under the void-for-vagueness doctrine as it applies to Kourkoules.

Section 198 of Art. 2B is not overly uncertain in respect of the persons to whom it applies. It speaks in terms of "the offender." Webster's Third New International Dictionary (1967) defines "offender" as "one that violates a law, rule, or code of conduct; one that commits an offense." Black's Law Dictionary (4th ed. 1951) speaks of offender as "[c]ommonly used in statutes to indicate person implicated in the commission of a crime. . . ." It is readily apparent from a plain reading of the statute that a person who commits the acts it proscribes is "the offender" it punishes. On the basis of Kourkoules' conduct as alleged, the statute clearly applies to him.[4]

Having determined that the contested statute is not unconstitutionally vague in respect of the persons to whom it applies, we test it in respect of the acts it purports to prohibit. Section 198 deals with false statements in any signed statement, report, oath, or affidavit required under any of the provisions of the Alcoholic Beverages Law. It declares that the person who makes such a false statement "shall be deemed guilty of perjury, and upon conviction thereof, shall be subject to the penalties provided by law for that crime." Since the offender is subject to punishment only upon conviction of perjury, the elements of that offense are necessarily incorporated into § 198.

The crime of perjury was part of the common law to which the inhabitants of Maryland became entitled by the decla-

---

4. As we have indicated, the general rule by which the constitutionality of a statutory provision under attack on void-for-vagueness grounds is tested applies here. Under this rule constitutionality must be determined strictly on the basis of the statute's application to the particular facts at hand, Bowers v. State, 283 Md. 115, 122, 389 A.2d 341 (1978), that is, to Kourkoules in light of the circumstances surrounding him. Therefore, some matters which bothered Raine, C.J., in his determination of the constitutionality of the statute in the Levitt case are immaterial in our consideration of the Kourkoules case. Thus, that "offender" perhaps may be of questionable applicability to "one who utters a false statement," or to the Notary Public administering the oath need not now concern us.

ration in Art. 5 of the Declaration of Rights, Constitution of Maryland. *Deckard v. State,* 38 Md. 186, 201-202 (1873). The Legislature has enacted a Perjury Act which explicitly recognizes common law perjury. Md. Code (1957, 1976 Repl. Vol.) Art. 27, §§ 435-439. *See Tischler v. State,* 206 Md. 386, 391, 111 A.2d 655 (1955). Section 435 of the Act provides, in relevant part:

> "An oath or affirmation, if made willfully and falsely in any of the following cases, shall be deemed perjury: First, in all cases where false swearing would be perjury at common law; secondly, in all affidavits required by law to be taken. . . ."

In the statute, perjury encompasses common law perjury as well as other acts which at common law constituted the lesser crime of false swearing.[5] *Gatewood v. State,* 15 Md. App. 314, 317, 290 A.2d 551 (1972).

What constituted perjury at the common law is universally accepted. At the common law perjury is "a crime committed when a *lawful* oath is administered, in some *judicial* proceeding, to a person who swears *wilfully, absolutely,* and *falsely,* in a matter *material* to the issue or point in question." 4 Blackstone, Commentaries \* 137 *citing* 3 Coke, *Inst.* \* 163. Similar definitions are given in Hochheimer, *Criminal Law* § 404 (2d ed. 1904); Clark & Marshall, *A Treatise on the Law of Crimes* § 14.03 (7th ed. 1967); 3 Wharton, *Criminal Law and Procedure* § 1290 (Anderson ed. 1957). The Maryland cases are in accord. *See Brown v. State,* 225 Md. 610, 616, 171 A.2d 456 (1961); *State v. Mercer,* 101 Md. 535, 538, 61 A. 220 (1905); *State v. Floto,* 81 Md. 600, 601, 32 A. 315 (1895). The same elements appear

---

5. "False swearing is what would be perjury except that it is not in a judicial proceeding but in some other proceeding or matter in which an oath is required by law." Perkins, *Criminal Law* 454 (2d ed. 1969).

The statute also placed an affirmation under the crime of perjury as an oath-equivalent. "An affirmation, which differs from an oath in omitting the appeal to the Deity, when permitted by law to take the place of an oath, places the person taking it in the same situation as to penal consequences of falsity as an oath." Hochheimer, *Criminal Law* § 405 (2d ed. 1904).

in all the definitions: (1) a false oath, (2) wilfully and corruptly made,[6] (3) in a judicial proceeding, (4) as to a matter material to the point in question.

Just as the Legislature has specifically eliminated the necessity of a judicial proceeding as an element of perjury by the provisions of § 435 of Art. 27, so, in § 198 of Art. 2B, it has explicitly obviated a false oath as a necessary element of perjury as far as the Alcoholic Beverages Law is concerned. Section 198 deems to be perjury a false statement in any signed statement or report required by that Law even though the document was not under oath or affidavit. This is not unique. "[T]here is not the slightest doubt that the Legislature had the power to define what acts shall constitute criminal offenses and what penalties shall be inflicted on offenders, the only limitation being that such enactments shall not infringe on constitutional rights and privileges." *Greenwald v. State,* 221 Md. 235, 240, 155 A.2d 894 (1959), *appeal dismissed,* 363 U.S. 719 (1960). *See Glickfield v. State,* 203 Md. 400, 404, 101 A.2d 229 (1953); *State v. Seney Company,* 134 Md. 437, 107 A. 189 (1919). In *Greenwald* the Court found that the legislative removal of an oath as a necessary element of the crime of perjury with respect to procurement of a marriage license was valid. The statute there, § 11 of Art. 62, deemed a material false statement, knowingly made, to be perjury. The Court observed that "there was no reason why the Legislature could not remove the requirement of an oath, and in this

6. In this jurisdiction the words "falsely," "wilfully," and "knowingly" are deemed to necessarily involve "corruptly." State v. Bixler, 62 Md. 354, 357 (1884). See State v. Devers and Webster, 260 Md. 360, 372, 272 A.2d 794, *cert. denied,* 404 U.S. 824 (1971) in which corruptly and wilfully appear to be considered synonymous. For a discussion of the matter *see* 3 Wharton, *Criminal Law and Procedure* § 1292 (Anderson ed. 1957).

Professor Perkins defines common law perjury without mention of wilfully and corruptly: "Perjury is a false oath in a judicial proceeding in regard to a material matter." Perkins, *Criminal Law* 454 (2d ed. 1969). He acknowledges that "[a] wrongful intent is an essential ingredient of the crime," *id.* at 460, but he asserts that "[w]ilfulness and corruption are inherent in the false-oath concept, and it would be tautological to define perjury in terms of a 'false oath wilfully and corruptly given.'" *Id.* "A false oath is a sworn statement, whether accurate or not, given without sincere belief in its complete and undoubted accuracy. Any such oath is wilfully and corruptly false." *Id.* at 461. And "[g]enerally, . . . a belief as to the falsity of testimony may be inferred by the jury from proof of the falsity itself." *Id.*

instance it has explicitly and effectively done so by providing a non-oath substitute for it as it has done several times before. . . . All such substitutions, however, either directly or impliedly, are made the equivalent of an oath." [7] 221 Md. at 241. The Court found it implicit in the marriage license law that the non-oath substitute was the equivalent of an oath.

Following the *Greenwald* rationale, the signed statement or report in § 198 is a non-oath substitute and is the equivalent of an oath. It is clear that the Legislature intended to remove the requirement of an oath in this context. Originally the "False statements" provisions concerned only "any affidavit or oath required under the provisions of [Art. 2B]. . . ." Acts 1933 (Spec. Sess.) ch. 2, § 35. The section was amended by Acts 1939, ch. 775, § 53B to add any signed statement or report. Thus, the Legislature explicitly and effectively provided a non-oath substitute for the requirement of an oath as an element of perjury with respect to the Alcoholic Beverages Law. The signed statement or report called for in § 198 is the equivalent of the oath required in common law perjury and reference here-inafter to "oath" includes this non-oath substitute.

It is abundantly clear that § 198 of Art. 2B feeds on § 435 of Art. 27 which, in turn, feeds on the common law. Therefore, except for the necessity of a judicial proceeding, which has been explicitly eliminated by including false swearing, all the elements of common law perjury are present in § 198. The requirement of an oath is expressly satisfied as the unsworn signed statement or report is a valid non-oath substitute. The element of falsity is specifically designated. The requirement that the false oath be wilfully and corruptly given and that it be in regard to a material matter is read into the statute through Art. 27, § 435 and the common law. The implication rather than the expression of wilfulness, corruption and materiality does not, in the

---

7. Included in the several examples which the Court gave of previous legislative non-oath substitutes with respect to the crime of perjury was a "false statement under alcoholic beverages laws," Art. 2B, § 198. Greenwald v. State, 221 Md. 235, 241, n. 2, 155 A.2d 894 (1959, *appeal dismissed,* 363 U.S. 719 (1960).

circumstances, bring the statute within the void-for-vagueness doctrine.

The view above expressed is consistent with the principles of statutory construction. Both Art. 27, § 435 and Art. 2B, § 198 deal with the crime of perjury. "[W]here possible, statutes dealing with the same subject matter should be construed as supplementary to each other." *State v. Fisher,* 204 Md. 307, 314, 104 A.2d 403 (1954). "Statutes which relate to the same subject-matter and are not inconsistent with each other are in *pari materia,* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope, even though they were passed at different times and contain no reference to each other." *Pressman v. Elgin,* 187 Md. 446, 450, 50 A.2d 560 (1947), and cases therein cited. *See Finance Co. v. Schlissler,* 165 Md. 585, 586-587, 170 A. 173 (1934). Furthermore, "[t]here is the . . . presumption that the Legislature had full knowledge of and information as to existing law and legislation on the subject matter of the statute it was enacting." *St. Joseph Hospital v. Quinn,* 241 Md. 371, 379, 216 A.2d 732 (1966).

Section 198 of Art. 2B deems the offender guilty of perjury and makes him subject upon conviction to the penalties provided by law for "that crime." "That crime" is defined in § 435 of Art. 27 which not only refers to the common law but speaks in terms of "willfully and falsely," which, as we have indicated, includes "corruptly." In the permissible form of indictment for the crime, prescribed by the Legislature in § 436 of Art. 27, the elements of wilfull and corrupt false swearing to material matters, the common law elements, are expressly set out.

In the light of all this it would take a strained construction indeed to find that § 198 deems to be a perjurer a person who makes an untrue statement by mistake of fact or law or by defect of memory, or inadvertently, or with sincere belief in its complete and undoubted accuracy. It would not only be contrary to statutory construction but repellent to reason and common sense to interpret the statute as encompassing

a false statement regarding some matter not material to the subject. What constitutes perjury as used in § 198 can be fairly ascertained by reference to Maryland statutes on the subject, judicial determinations, the common law, dictionaries and treatises. *See Bowers,* 283 Md. at 125. Therefore, it is explicit enough to enable a person of ordinary intelligence to ascertain with a fair degree of certainty what it prohibits and what conduct on the offender's part will render him liable to its penalties. It gives Kourkoules fair notice so that he was free to choose between lawful and unlawful conduct.[8] We hold that Art. 2B, § 198 does not affront the constitutional guarantees of due process.

References to perjury run rampant throughout the Maryland Code — 115 references to "perjury" in 88 sections. There are many areas in which the Legislature has invoked the crime of perjury as a sanction for false statements. In some of the situations the elements of wilfulness and materiality are expressly set out. In others, one of them is designated. In a number, none are explicitly specified. For example, as we have seen, "[a]ny person who shall *knowingly* make any *material* false statement to procure, or to assist any other person to procure, any license or marriage cere- mony in violation of the provisions of [Art. 62, Marriages] . . . shall be guilty and punished for perjury." Md. Code (1957, 1979 Repl. Vol.) Art. 62, § 11 b. And "[a]ny person *wilfully* testifying falsely under oath as to any matter *material* to any such examination, investigation, or hearing [under the Insurance Code], shall upon conviction thereof be guilty of perjury and shall be punished accordingly." Code (1957, 1979 Repl. Vol.) Art. 48A, § 27 (4). But in the area of parole and probation the statute specifies materiality without expressly setting out wilfulness. It reads: ". . . false swearing on the part of any witness testifying before said members of said Board [of Parole and Probation] on a matter *material* to

---

8. Despite the view the Assistant State's Attorney advanced at the hearing on the motion to dismiss the indictment, namely, that the elements of perjury were not involved, *see supra,* the indictment alleged unlawful misconduct on the part of Kourkoules in the express terms of the elements of perjury — that a false oath was given wilfully, corruptly and knowingly in regard to material matters.

14

inquiry shall be deemed perjury." Code (1957, 1978 Repl. Vol.) Art. 41, § 121. On the other hand, the false statement provision of the Motor Fuel Inspection Law designates "wilfully" but does not mention materiality. "If any signed statement, report, affidavit, or oath, required under any of the provisions of this subtitle, shall contain any false statement *willfully,* the offender shall be deemed guilty of perjury, and upon conviction thereof, shall be subject to the penalties provided for that crime." Code (1957, 1979 Repl. Vol.) Art. 56, § 157 L. This is also so with respect to Code (1957, 1976 Repl. Vol.) Art. 33, § 24-12 (False swearing in oath or affirmation prescribed by any examination provided for in the Election Code or prescribed by the State Administrative Board of Election Laws) and § 26-15 (False, fraudulent, or misleading statements made by candidate for office or any member or officer of any political committee); Code (1957, 1979 Repl. Vol.) Art. 48A, § 361 (False statement in procuring license from Insurance Commissioner to engage in business of operating health service plans); Code (1957, 1979 Repl. Vol.) Art. 88B, § 35 (False swearing in obtaining or procuring any share or payment under State Police retirement and pension system); and Md. Real Property (1974) Code Ann. (1980 Cum. Supp.) § 13-105 (False verification or oath 'filed in patent proceeding). Emphasis in the quotes above is added.

A number of the statutes concerning perjury do not set out either wilfullness or materiality. Another section of the Alcoholic Beverages Law is in this category. Section 57 (e) of Art. 2B provides: "If any false statement is made in any part of [the application for Alcoholic Beverage License in Caroline County] the said applicant or applicants shall be deemed guilty of perjury, and upon conviction therefor his license shall be revoked and the applicant subjected to penalties provided by law for that crime." The law with respect to the Commissioners of Pharmacy also falls in this classification. "Anyone swearing falsely in the affidavit [accompanying the application of an assistant pharmacist for a special examination for registration as a pharmacist] shall be deemed guilty of perjury." Code (1957, 1980 Repl. Vol.)

Art. 43, § 262. Similarly, "[a]nyone swearing falsely in the affidavit [filed with the application for examination as a pharmacist] shall be deemed guilty of perjury." *Id.* § 263. And the former law relating to banks and trust companies simply read in regard to a report to the Bank Commissioners that "any person making oath to false statements on such report shall be deemed guilty of perjury, and upon conviction shall be subject to the penalties provided by law for that offense." Code (1957) Art. 11, § 44.[9] Likewise is Code (1957, 1978 Repl. Vol.) Art. 38A, § 8 (h) which provides that "false swearing in any matter or proceeding [before the State Fire Marshall] shall be deemed perjury and shall be punishable as such." And Code (1957, 1978 Repl. Vol.) Art. 40, § 30 (1980 Cum. Supp.) which provides that "[f]alse swearing by any witness before the Legislative Policy Committee or any standing committee constitutes and is punishable as perjury." And Code (1957, 1980 Repl. Vol.) Art. 78B, § 11 (e) which provides that "[f]alse swearing on the part of any witnesses [testifying before the Racing Commission] shall be deemed perjury and shall be punished as such." And Code (1957, 1976 Repl. Vol.) Art. 27, § 675 which provides that "false swearing or testimony on the part of any . . . witness [testifying before the Commissioner of Correction] is perjury and punishable as such."

In the law pertaining to revenue and taxes, "[e]very report, application and response required by this article shall be deemed to have been made under oath if it contains a declaration, preceding the signature of the maker, to the effect that it is made under the penalties of perjury." Code (1957, 1975 Repl. Vol.) Art. 81, § 5. This approach is followed in a great number of instances throughout the Code. It follows that if the report, application or response contains a false statement, willfully made, in regard to a material matter, the maker would be guilty of perjury. For a discussion of this type of oath-equivalent *see* Perkins, *Criminal Law* 456 (2d ed. 1969). The law concerning social

---

**9.** Article 11 of the 1957 Code was repealed by Acts 1980, ch. 33, § 1. The new general penalty provisions are not structured around perjury. *See* § 5-802 of the Financial Institutions Article (Code 1980).

services approaches the matter of false statements in a different way. It provides: "Any person who in making and signing . . . an application [for money, property, food stamps, medical care or other assistance] . . . makes a false or fraudulent statement with intent to obtain any such money, property, food stamps, medical care or other assistance is guilty of perjury and upon conviction therefor is subject to the penalties provided by law for perjury." Code (1957, 1979 Repl. Vol.) Art. 88A, § 62 (a), (1980 Cum. Supp.).

It is readily apparent that there is no rationale governing the express inclusion or the omission of the elements of perjury in the various statutes. In any event, it is certain that in none of the statutes did the manner in which they were drafted demonstrate a change in the nature of the offense of perjury or create a new crime.

## The Levitt Case

As the license of Nettie Levitt for the sale of alcoholic beverages was about to expire, an application for renewal was filed in her name over what was purported to be her signature with the Board of Liquor License Commissioners for Baltimore County. The renewal application contained an affidavit certifying that she had appeared before a Notary Public, Jeffrey Levitt, and made oath in due form of law that the matters and facts contained in the application were true. The affidavit bore the signature "Jeffrey Levitt" as to the notary public before whom the oath was made, and the notarial seal of Jeffrey Levitt was imprinted thereon. Jeffrey Levitt was indicted for violating the provisions of Art. 2B, § 198. *See supra.*

The indictment came on for trial in the Circuit Court for Baltimore County, Raine, C.J., presiding. Levitt was arraigned, pleaded not guilty and elected a court trial. The witnesses were sequestered upon motion of the defense, and the case proceeded to trial. Evidence was adduced on behalf of the State through the testimony of seven witnesses, each fully examined and cross-examined, and the introduction of ten exhibits. The evidence tended to show that Jeffrey Levitt

had signed the name of his mother, Nettie Levitt, on the application for renewal of her license, and that the business relating to the license had in fact been sold, contrary to statements in the application. The State concluded its case in chief and rested. Levitt moved for judgment of acquittal. The motion was argued at length. The court issued an order accompanied by a memorandum opinion, granting "the Defendant's Motion of Acquittal offered at the close of the State's case. . . ." The State appealed.

Md. Rule 756 a permits a defendant to move for a judgment of acquittal at the close of the evidence offered by the State. Section b of the Rule provides:

> "If the court grants a motion for judgment of acquittal or determines on its own motion that a judgment of acquittal should be granted, it shall direct the clerk to enter the judgment of acquittal and to note that it has been entered by direction of the court."

Beyond question, the trial court granted a motion for judgment of acquittal made by Levitt pursuant to the Maryland Rules of Procedure and fully argued. The effect of the grant of the motion was the acquittal of Levitt of the crime with which he was charged, namely, the making of a false statement proscribed by § 198 of Art. 2B. Obviously, "the judgment rendered by Judge Raine" from which the State appealed could only be the acquittal of Jeffrey Levitt as to that crime. It is clear that the appeal is not allowed by law.

Jeffrey Levitt was placed in jeopardy on the offense charged. The trial before the court had proceeded to the conclusion of the State's case in chief with the testimony of witnesses and the introduction into evidence of a number of documents. Even before *Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056 (1969) made the double jeopardy provision of the Fifth Amendment to the federal constitution applicable to the states through the Fourteenth Amendment, it was the established law of this State that a person may not be twice placed in jeopardy for the same offense. *State v. Adams,* 196 Md. 341, 76 A.2d 575 (1950); *State v. Stanley,* 34 Md. App. 393, 367 A.2d 27 (1977). Certainly, Jeffrey Levitt, in the

18

circumstances, could not be retried for the crime here charged against him. Common sense, which "often makes good law," *Peake v. United States,* 353 U.S. 43, 46, 77 S. Ct. 613 (1957), dictates that Levitt "not be forced to defend [the] appeal taken by the State." *Stanley,* 34 Md. App. 397, n. 4.

There is the principle in Maryland that appellate jurisdiction is dependent upon a statutory grant of power. *Lohss and Sprenkle v. State,* 272 Md. 113, 116, 321 A.2d 534 (1974) and cases therein cited. In criminal cases the Legislature has authorized the State to appeal only "(1) From a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition; and (2) From a final judgment if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code." Code (1974, 1980 Repl. Vol.) § 12-302 (c) of the Courts and Judicial Proceedings Article.[10] There is no statutory grant allowing the State to appeal from the grant of a motion for judgment of acquittal, and, even if there were, it would offend the federal constitution.

The State suggests that because the court's action was constitutionally based (the court declared that "[t]he State's case must fail because of the unconstitutionality of the law under which the Defendant was charged") a motion to dismiss the indictment rather than a motion for judgment of acquittal was appropriate. It urges that "[t]he effect of the Order [granting the motion for judgment of acquittal] was not the intentional rendering of a verdict of 'not guilty.'" Thus, the State concludes, its "appeal is allowed by law." We cannot accept this gambit. Unequivocally, the court granted a motion for judgment of acquittal. No motion to dismiss the indictment was ever before it. We are unable to gather from the proceedings that the true intention of the court was other than to find Levitt not guilty. The crux of the argument of the defense was that Nettie Levitt, not Jeffrey Levitt, was

---

**10.** Before the recodification, Maryland Code (1957, 1968 Repl. Vol.) Art. 5, § 14, from which § 12-302 (c) of the Courts and Judicial Proceedings Article was taken, included the express provision, "but the State shall have no right of appeal in any criminal action where the defendant has been tried and acquitted."

the licensee, that, therefore, there was no requirement that Jeffrey submit the application for renewal, and that as he was not required to submit it, there was no violation of § 198. The fact that he signed Nettie's name to the application, the defense urged, was not pertinent. Although he may have committed a number of other crimes, he was not guilty of the one charged. The trial judge suggested that Levitt was guilty of "forgery, guilty of conspiracy to violate the liquor laws, guilty of subornation of perjury and guilty of false pretenses." He said: "These are four that occur to me right off hand. But query, is he guilty of Article 2B, 198?" After persistent argument by the Assistant State's Attorney the judge again noted the crimes of which Levitt may have been guilty, and observed: "The only thing that concerns me is, though, whether he's guilty of a violation of the one little count in this indictment. Why the State didn't put in four or five counts and cover the waterfront is beyond me." The court noticed the failure of Nettie Levitt to testify: "Trying this case without Nettie Levitt is like Hamlet without the prince." And later, it noted: "The question is narrow. Has the State proved that this particular section has been violated." During further and prolonged argument by both sides the court mentioned the matter of the constitutionality of the statute.

No matter what basis the judge ultimately assigned in support of his grant of the motion for judgment of acquittal, grant it he did. The grant of the motion was his deliberate and considered decision. We can view his action in no other light than to operate to acquit Jeffrey Levitt. The Court of Appeals said over a hundred years ago in *State v. Shields*, 49 Md. 301, 303 (1878):

> "It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misde-meanor, the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be

the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury."

Since the appeal by the State in Levitt's case is not allowed by law, it is dismissed. Md. Rule 1035 b 1.

> *Case No. 928, State v. Kourkoules: Order dismissing the indictment vacated; case remanded for further proceedings; costs to be paid by appellee.*
> *Case No. 690, State v. Levitt: Appeal dismissed; costs to be paid by Baltimore County.*