# CHARLES EDWARD SIMMS v. STATE OF MARYLAND

[No. 1055, September Term, 1980.]

*Decided September 2, 1981.*

The cause was submitted on briefs to MOORE, MASON and WILNER, JJ.

Submitted by *William A. Beale, Assigned Public Defender,* for appellant.

Submitted by *Richard B. Rosenblatt, Assistant Attorney General, Stephen H. Sachs, Attorney General,* and *Richard D. Warren, State's Attorney for Wicomico County,* for appellee.

MASON, J., delivered the opinion of the Court.

In this case we are asked to determine whether the lower court abused its discretion in not granting appellant's

request for removal of his case on the basis of prejudicial pretrial publicity.

The record discloses that on 6 May 1980 appellant shot and killed his estranged wife, Darlene Simms, when she returned to pick up some personal items from the trailer where appellant was living. On 11 June 1980 appellant filed a suggestion for removal on the basis of prejudicial pretrial publicity, and a hearing was held on this issue on 30 June 1980 in the Circuit Court for Wicomico County (Pollitt, J.). At this hearing a reporter for The (Salisbury) Daily Times and the news director of WBOC, the local television and radio station, testified regarding the coverage the crime had received in their respective media. The evidence adduced disclosed that during the period between 7 May 1980 and 12 June 1980 six articles, including an editorial and a letter to the editor, were published in The (Salisbury) Daily Times. For a similar period, 7 May 1980 to 11 June 1980, there was also radio and television coverage of this offense. All the relevant newspaper articles and television and radio transcripts were submitted into evidence for the hearing judge's review. In addition, there was testimony that several articles had appeared in the Baltimore Sun. Although a factual account of the crime was given in some of the articles, most of the coverage focused on collateral issues — to wit: the "police escort law",[1] whether the deceased had requested

---

1. MD. ANN. CODE, art. 27, § 11F (Supp. 1980) provides:

(a) *Assistance to victim.* — Any person who alleges to have been a victim of spousal assault and who believes there is a danger of serious and immediate injury to himself or herself may request the assistance of a local law enforcement agency. A local law enforcement officer responding to the request for assistance shall:

(1) Protect the complainant from harm when responding to the request; and

(2) Accompany the complainant to the family home so that the complainant may remove his or her personal clothing and effects and also the personal clothing and effects of any children that may be in the care of the complainant. The personal effects to be removed shall be only those required for immediate needs.

(b) *Immunity of law enforcement officer from civil liability.* — Any law enforcement officer responding to such a request shall be immune from civil liability in complying with the request as long as the officer acts in good faith and in a reasonable manner.

and was denied police protection, and the Governor's investigation of this matter.

The hearing judge denying the motion for removal stated:

> At this point I am not able to say that the publicity in and of itself is so prejudicial as to require the removal of this case. Some of it I do not like, but I am not prepared to say that it is that prejudicial.
>
> Subject to inquiry of the jurors on their *voir dire,* we will deny the motion for removal at this time.

At the commencement of the trial on 11 August 1980, all of the prospective jurors, except two, admitted that they had read, seen, or heard some form of pretrial publicity concerning the case. After excusing several prospective jurors who knew the victim or her family, the remaining jurors were questioned individually by the trial judge in his chamber with appellant present. Although all of the prospective jurors, with the exception of two, admitted seeing or hearing media coverage of the crime, only one such juror advised the judge that she would be unable to judge the case solely on the evidence as presented from the witness stand. In sum, of the twelve jurors ultimately selected, ten of them admitted they had been exposed to publicity regarding the case from either the newspaper, radio, television, or by word of mouth, but all stated the publicity would not prevent them from giving appellant a fair trial. After completion of the *voir dire* examination, the following colloquy occurred:

> MR. ROGAN [appellant's trial counsel]: We have no exception to the voir dire.
>
> We have previously filed a Suggestion For Removal, and since approximately a hundred percent of the panel has heard something about it, we would again ask the Court to remove the case, Your Honor.
>
> THE COURT: All right, sir.
>
> The motion is denied. We think we have evinced on their voir dire an impartiality.

Thereafter, appellant was convicted by the jury in the Circuit Court for Wicomico County (Truitt, J.) of first degree murder and sentenced to a term of life imprisonment.

Appellant argues, in essence, that the pretrial publicity, when considered in its totality, was sufficient to establish prejudice and Judge Pollitt should have exercised his discretion in favor of granting the suggestion of removal. He argues further that inasmuch as he "was forced to seat" a jury in which most of the members, plus the alternate, had been exposed to some sort of pretrial publicity, Judge Truitt abused his discretion in not granting his request for a change of venue. We do not agree.

The question of whether a non-capital case should be removed to another jurisdiction is one which rests within the discretion of the trial court. *Shreffler v. Morris,* 262 Md. 161, 277 A. 2d 62 (1971); *Waine v. State,* 37 Md. App. 222, 377 A. 2d 509 (1977); *See also* Md. Const. art. IV § 8; Maryland Rule 744. The exercise of that discretion, however, is reviewable on appeal. *Seidman v. State,* 230 Md. 305 (1962), 187 A. 2d 109, *cert. denied,* 374 U.S. 807 (1962); *Gordon v. State,* 14 Md. App. 245, 286 A. 2d 833 (1972). Moreover, the party seeking removal has the burden of showing that "he has been prejudiced by adverse publicity and that the *voir dire* examination of prospective jurors, available to him, would not be adequate to assure him a fair and impartial trial." *Waine v. State, supra,* at 227. It is not to be presumed, however, that an unbiased jury cannot be had. *Veney v. State,* 251 Md. 182, 246 A. 2d 568 (1968), *cert. denied,* 394 U.S. 948 (1969). Only where the pretrial publicity in and of itself is so massive and widespread that it is clearly prejudicial, or where the publicity is so inherently prejudicial that it "saturated the community" is the remedial step of *voir dire* meaningless. *Sheppard v. Maxwell,* 364 U.S. 333, 363 (1960); *Waine v. State, supra* at 228. *See also Estes v. Texas,* 381 U.S. 532 (1965); *Rideau v. Louisiana,* 373 U.S. 723 (1963); *Irvin v. Dowd,* 366 U.S. 717 (1961).

A party moving for a change of venue carries a heavy burden of satisfying the court that there is so great a prejudice against him that he cannot obtain a fair and impartial

trial. Generally, in order to meet this burden, the defendant must show in non-capital cases "(1) that the newspaper article [or pretrial publicity] is prejudicial, (2) that a juror has read the prejudicial newspaper article [or otherwise been exposed to the prejudicial publicity], and (3) that the juror's decision at the trial was influenced by that newspaper article [or pretrial publicity]." *Presley v. State,* 224 Md. 550, 555, 168 A. 2d 510 (1961), *cert. denied,* 368 U.S. 957 (1961); *Waine v. State, supra,* at 227.

*Voir dire* examination is usually a sufficient mechanism to insure that a defendant obtains a fair and impartial trial despite the pretrial publicity. *United States v. Jones,* 542 F. 2d 186 (4th Cir. 1976), *cert. denied,* 426 U.S. 922 (1977). This may be satisfied if each venireman empaneled indicates that he has not formed an opinion of defendant's guilt or innocence as a result of the pretrial publicity or that the pretrial publicity would not "in any way derogate from his ability to give the defendant a fair and impartial trial," as was done in the instant case. *See Veney v. State, supra,* at 1145; *Seidman v. State, supra,* at 324; *Waine v. State, supra,* at 225; *Mason v. State,* 12 Md. App. 655, 679, 280 A.2d 753 (1971). In *Dobbert v. Florida,* 432 U.S. 282 (1977) the United States Supreme Court stated that extensive knowledge in the community of either the crime or the putative criminal is not sufficient by itself to render a trial constitutionally unfair. *See Veney v. State, supra,* at 196 where the Court of Appeals remarked:

> We believe, however, that in the relatively small community from which the jury was drawn and in which one of the trial judges lived, the trial court was entitled to consider, as it did, the judge's knowledge of local conduct, thoughts, reactions and publicity in deciding whether an unbiased jury could be drawn.

After reviewing the newspaper clippings and the radio and television transcripts submitted by appellant at the hearing before Judge Pollitt, we conclude that the pretrial publicity in this case was not so inherently prejudicial as to

require a change of venue prior to *voir dire* examination of potential jurors.[2] Furthermore, even though most of the jurors had been exposed to some pretrial publicity, prospective jurors are not required to be totally ignorant of the issues and circumstances surrounding the case. In this regard *see Irvin v. Dowd, supra,* where the Supreme Court stated:

It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

366 U.S. at 722-723. Of similar import, *see also Calley v. Callaway,* 519 F. 2d 184 (5th Cir. 1975) where the Court noted:

---

2. Compare Rideau v. Louisiana, supra, where the United States Supreme Court held that pretrial publicity necessitated a change of venue before voir dire examination. There, one third to one-half of the entire population of the community had seen a televised twenty minute "interview" with the defendant shortly before trial in which he appeared "in jail, flanked by the sheriff and two State troopers, admitting in detail the commission of the robbery, kidnapping and murder, in response to leading questions by the sheriff." 373 U.S. at 725. See also Lee v. State, 161 Md. 430, 157 A. 2d 723 (1931) where the Court of Appeals held that there was no latitude for discretion in considering a motion for removal where there had been numerous endeavors to lynch the defendant and plans were made to bring him to trial heavily guarded — all of which led to the conclusion that a fair unprejudicial jury could not be had. Of similar import, see Jones v. State, 185 Md. 481, 45 A. 2d 350 (1946).

The district court's conclusion that mere exposure to publicity necessarily prevented any person from serving as a juror has an extremely unsettling sidelight. If, in this age of instant, mass communication, we were to automatically disqualify persons who have heard about an alleged crime from serving as a juror, the inevitable result would be that truly heinous or notorious acts will go unpunished. The law does not prohibit the informed citizen from participating in the affairs of justice. In prominent cases of national concern, we cannot allow widespread publicity concerning these matters to paralyze our system of justice.

*Id.* at 210. In *United States v. Mandel,* 415 F. Supp. 1033, 1073 (D. Md. 1976), the Court observed:

It is not all publicity that causes prejudice to a defendant, but only that publicity that operates to deprive defendant of a fair trial. Such publicity is the type that proclaims the defendant's guilt in advance of trial and prejudices the minds of the public against the defendant to such an extent that most people are unable to weigh the evidence objectively.

This was not the case here. Accordingly, we conclude that the jurors' knowledge of the pretrial publicity surrounding this case did not deprive appellant of a fair and impartial trial. Thus, there was neither error nor an abuse of discretion in denying appellant's motion for removal.

*Judgment affirmed.*
*Costs to be paid by appellant.*