MARILYN D. SMITH *v.* STATE OF MARYLAND

[No. 933, September Term, 1981.]

*Decided April 12, 1982.*

The cause was argued before MORTON and MOORE, JJ., and RICHARD M. POLLITT, Chief Judge of the First Judicial Circuit, specially assigned.

*A. Dwight Pettit* for appellant.

*Philip M. Andrews, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, John R. Salvatore, State's Attorney for Washington County,* and *Mary Ann Day, Assistant State's Attorney for Washington County,* on the brief, for appellee.

POLLITT, J., delivered the opinion of the Court.

It has been said frequently by humorists that one of the more often told falsehoods of modern times is "the check is in the mail". It is, by the very nature of such a statement, extremely difficult to prove its falsity by direct, positive evidence. As was done in this case, however, the falsity of such a statement is provable by circumstantial evidence.

On March 24, 1981, the appellant, Marilyn D. Smith, was convicted by a jury in the Circuit Court for Washington County (Wright, J.) of four counts of perjury. Concurrent sentences of two years confinement in the custody of the Division of Corrections were imposed on each count, the execution of the sentences suspended, and the appellant placed on probation. From those judgments she appealed to this Court.

Appellant raises five issues on appeal, as follows:

I. Does *Maryland Rule* 744 make an unconstitutional distinction by permitting an automatic right of removal in capital cases while requiring the showing that the suggestion of removal is based on reasonable grounds in non-capital cases?

II. Did the trial court abuse its discretion in denying removal in this case?

III. Did the trial court err in denying appellant's Motion for Judgment of Acquittal?

IV. Did the trial court err in refusing to dismiss the third and fourth counts of the indictment on the grounds of duplicity?

V. Did the trial court's instructions to the jury on verdict unanimity constitute plain error?

We shall answer all questions in the negative and affirm the judgments of the trial court.

The four counts of perjury listed in the indictment stem from testimony given by appellant on August 8 and 9, 1979, in an equity action filed against her by the Attorney General of Maryland.[1] The equity trial was the culmination of an investigation of citizen complaints to the Consumer Protection Division of the Attorney General's Office alleging, *inter alia,* that appellant had collected various sums of money from customers for furniture sold but never delivered and for which those customers were never given refunds. Two of the complaining witnesses in that action were Aubrey Berry and Mabel A. Farber.

Mr. Berry testified at the perjury trial that he had purchased a box spring and a reclining chair from appellant in 1978, for which his wife wrote a check for the full amount of $178.88. He never received either the furniture purchased or a refund from appellant. He had given substantially that

---

1. *Attorney General of Maryland v. Marilyn Smith T/A Smith Furniture Company,* Equity No. 32,108, in the Circuit Court for Washington County, Maryland. Affirmed in part and reversed in part by this Court in *Marilyn Smith, T/A Smith Furniture Co., et al. v. Attorney General of Maryland,* 46 Md. App. 78, 415 A.2d 651 (1980).

same testimony before both the Special Master and the Chancellor (Corderman, J.) in the equity trial.

Mrs. Farber testified at the perjury trial that she had purchased furniture from appellant in 1978, for which she paid $100.00 in cash and $171.90 by check. She too had received neither furniture nor refund from appellant, and she too had given substantially the same testimony in the equity case.

The complete transcript of the equity trial was received in evidence, without objection, in the perjury trial.

Prior to the equity trial, both Berry and Farber had obtained judgments against appellant in the District Court of Maryland for Washington County. Certified copies of those judgments were received in evidence in the perjury trial. The Berry judgment was entered on November 21, 1978, and the Farber judgment was entered on October 13, 1978. Each of those documents shows that appellant was summoned by personal service but failed to appear and copies of both judgments were sent to her by the District Court. Both judgments remained unsatisfied at the time of the equity trial and at the time of the criminal trial.

It was established by Joseph Hamilton, Deputy Clerk of the Circuit Court for Washington County, that he had duly administered the oath to appellant on August 8, 1979, with the usual response.

Lucille Mowen, Court Reporter for Judge Corderman, testified that she had transcribed the proceedings in Equity No. 32,108. She then read into the record the various statements made under oath by appellant which gave rise to the charges of perjury.

The testimony of Mowen and the transcript indicate that when questioned by her own attorney at the equity trial about the refund to Berry, appellant responded, "I did return to him the money on February the 3rd." When questioned by the Assistant Attorney General on cross-examination, appellant similarly responded, ". . . I sent him a check on February the 3rd . . .". The Assistant Attorney General again probed this point when he later asked, "And you have sent Mr. Berry a check for $178.88?" Appellant responded,

"Right." When questioned by her own attorney about a refund to Farber, appellant stated, "We sent her a check on February the 3rd. Whether she used it or not, I don't know." When questioned about the Farber refund on cross-examination, she again replied, "We sent it February the 3rd, too." The State contends that each of appellant's representations made on direct and cross-examination constitutes a separate offense of perjury.

After her Motion for Judgment of Acquittal was denied, appellant testified in her own defense. She recalled testifying at the equity trial and stated that she did so to the "best of (her) memory." Appellant testified at the perjury trial "to the best of (her) recollection", she paid both Berry and Farber. She went on to state that she never intended to tell an untruth or to lie. She noted that she had never received the cancelled checks that she said she had sent to Berry and Farber. Before the close of her testimony, she again asserted that she had never told a "wilful untruth or misrepresentation". On cross-examination, appellant had difficulty remembering the specifics, *e.g.* account number, etc., of her checking account, but again asserted that she had paid Berry and Farber. Appellant called as defense witnesses Robert Hyssong, delivery supervisor at the Hagerstown Post Office, to testify about the daily mail flow there and a number of witnesses to testify as to appellant's character.

Further facts will be supplied as the need arises.

## ISSUE I

Appellant first contends that *Maryland Rule* 744 is unconstitutional in that it draws a distinction between removal in capital and non-capital cases.[2] Appellant argues

---

2. Rule 744 states:

"Rule 744. Removal.
a. Capital Cases.
When a defendant is charged with an offense for which the maximum penalty is death and a party files a suggestion under oath that he cannot have a fair and impartial trial in the court in which

that the distinction between the automatic removal provision in capital cases and the conditional removal provision in non-capital cases is an unconstitutional deprivation of her right to be tried by an impartial jury. Removal in a non-capital case is conditioned upon a showing that the accused cannot receive a fair trial in that particular jurisdiction. Rule 744 implements the provisions of Article IV, Section 8 of the *Constitution of Maryland.* That provision has been analyzed by several Maryland cases.

Judge (later Chief Judge) Gilbert, writing for this Court in *Gibson, Tate & Austin v. State,* 17 Md. App. 246, 300 A.2d 692 (1973), set forth the rationale for the distinction between the removal provisions when he stated at 257-258:

"We believe that the rationale of *Johnson* [*v. Louisiana,* 406 U.S. 356 (1972)] is applicable to the case at bar. There is nothing invidious in the Maryland Constitutional distinction between removal in capital and non-capital criminal offenses. The distinction serves as a means of preventing an abuse of removal and thereby facilitates, expedites, and reduces expense in the administration of criminal justice. That Maryland chooses to 'treat capital offenders differently' does not violate 'the constitutional rights' of those charged with non-capital offenses."

Similarly, Judge Eldridge, writing for the Court of Appeals in *Johnson v. State,* 271 Md. 189, 315 A.2d 524 (1974), stated, at p. 194:

---

the case is pending, the Court shall order that the case be transmitted for trial to another court having jurisdiction. A suggestion filed by a defendant shall be under his personal oath. A suggestion filed by the State shall be under the oath of the State's Attorney.

b. Non-Capital Cases.

When a defendant is charged with an offense for which the maximum penalty is not death and a party files a suggestion in compliance with the requirements of section a of this Rule, the court shall order that the case be transmitted for trial to another court having jurisdiction only if it is satisfied that the suggestion is true or that there is a reasonable ground for it. A party who has obtained one removal may obtain further removal pursuant to this section."

> "The history of the removal provision, therefore, shows a shifting concern between having a broad right of removal and having a very limited right because of the abuse associated with requests for removal. The present constitutional language resulted from a desire to narrow the right because of the abuses shown. No other intent is revealed by the historical material."

The rationale set forth above is just as applicable to Rule 744. While some prejudice might be inherent in any capital offense, it is not necessarily present in a non-capital offense. The trial court's function is to examine the accused's suggestion of removal to see whether there are reasonable grounds for it. That Rule 744 grants the judge the power and discretion to do so does not deprive a defendant of the right to a trial by an impartial jury.

## ISSUE II

Appellant next alleges that the trial judge abused his discretion by refusing to grant a change of venue. The record discloses that on June 9, 1980, appellant filed a motion for removal on the basis of pretrial publicity. A hearing on the motion was held on July 15, 1980 before Judge John P. Corderman. Appellant testified she had seen people on the street who had called her a "crook" and that she had received "very nasty" phone calls since the equity trial. Also introduced at the hearing were newspaper articles about the equity trial and subsequent indictment for perjury. Included among the former was an article wherein the presiding judge at the equity trial likened appellant to a "barracuda, lying in waiting (sic) for some poor, unsuspecting fish to swim by and be devoured." He went on to state that "(t)here was testimony from 20 consumers who swam by the door and were so devoured." [3]

---

3. While this language appears somewhat intemperate, the newspaper article was a factual report of that portion of the equity trial and was published on the last day of that trial, August 11, 1979, some 19 months prior to the criminal trial.

The hearing judge denying the motion for removal stated:

"... (t)here has been no showing that *voir dire* would not result in a panel of Jurors being selected to try the case based solely on the evidence before them. There are a number of newspaper articles which have been submitted, all of them save one relate to a civil case tried last year and the publicity does not begin to amount to anything like the publicity which has surrounded other cases which have been tried in this jurisdiction in which Jurors have been empaneled who were able to try the case based solely on the evidence before them at that time.

Therefore, the Court will deny the Motion for Change of Venue."

Evidently some *voir dire* questions were propounded to the prospective jurors at commencement of the trial. However, neither the questions nor the responses appear in the record before us. No objections or exceptions are noted in the record. Counsel for the appellant indicated that he had no objection to the jury as empaneled.

Removal of a non-capital offense rests within the sound discretion of the trial court. *Maryland Rule* 744; *Waine v. State,* 37 Md. App. 222, 377 A.2d 509 (1977). Review on appeal, however, is limited to consideration of whether the party seeking removal has met the burden of showing that "he has been prejudiced by adverse publicity and that the *voir dire* examination of prospective jurors, available to him, would not be adequate to assure him a fair and impartial trial." *Waine, supra,* 227.

Judge Mason, recently writing for this Court in *Simms v. State,* 49 Md. App. 515, 433 A.2d 1199 (1981), stated at 518-519:

"A party moving for a change of venue carries a heavy burden of satisfying the court that there is so great a prejudice against him that he cannot obtain a fair and impartial trial. Generally, in order to meet this burden, the defendant must show in

non-capital cases '(1) that the newspaper article (or pretrial publicity) is prejudicial, (2) that a juror has read the prejudicial newspaper article (or otherwise been exposed to the prejudicial publicity), and (3) that the juror's decision at the trial was influenced by that newspaper article (or pretrial publicity).' *Presley v. State,* 224 Md. 550, 555, 168 A.2d 510 (1961), *cert. denied,* 368 U.S. 957 (1961); *Waine v. State, supra,* at 227.

*Voir dire* examination is usually a sufficient mechanism to insure that a defendant obtains a fair and impartial trial despite the pretrial publicity. *United States v. Jones,* 542 F. 2d 186 (4th Cir. 1976), *cert. denied,* 426 U.S. 922 (1977). This may be satisfied if each venireman empaneled indicates that he has not formed an opinion of defendant's guilt or innocence as a result of the pretrial publicity or that the pretrial publicity would not 'in any way derogate from his ability to give the defendant a fair and impartial trial,' as was done in the instant case."

After a thorough examination of the record before us, we conclude that the pretrial publicity was not so inherently prejudicial as to require a change of venue prior to *voir dire* examination of potential jurors. Since the *voir dire* questions are not before us and since no objections or exceptions were noted, we cannot say that either the hearing judge or the trial judge abused his discretion in denying the motion for removal.[4]

---

4. When ruling on the Motion for New Trial, Judge Wright said:

"This Court took pains to examine the Jury Panel on *voir dire.* It elicited from those who indicated that they may be partial, response from those jurors. The Jury Panel was chosen from those persons who did not indicate any preconceived idea about the case from the standpoint of either the State or the Defendant. The *voir dire* certainly cured any possible prejudice because of pre-trial publicity."

## ISSUE III

Appellant next alleges the trial judge erred in denying her Motion for Judgment of Acquittal. She moved for judgment of acquittal at the close of the State's case, alleging there was no independent evidence sufficient to corroborate the testimony of either Berry or Farber. In denying the Motion, Judge Wright stated that the unsatisfied judgments in the District Court provided sufficient corroboration. He reasoned that appellant was an experienced business woman; that she had knowledge of the judgments, entered in October and November of 1978; that (in substance) the jury was entitled to infer from those facts that she would have assured the satisfaction of those judgments had she in fact paid Berry and Farber in February of 1979, particularly in view of the pending suit by the Consumer Protection Division based, in part, on those same claims.

While it was primarily the duty of Berry and Farber to enter the judgments satisfied,[5] we cannot say as a matter of law that the trial judge was wrong in his assessment of the reasonable inferences which could be drawn from the evidence. In any event, appellant then testified in her own defense and produced several other witnesses, thereby withdrawing her Motion. *Maryland Rule* 756. She renewed her Motion at the close of all the evidence and it was again denied. The jury then found her guilty of all counts.

The *Constitution of Maryland, Declaration of Rights,* Article 23, provides that "(i)n the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." This provision is further amplified by *Code* (1982 Replacement Volume) Article 27, Section 593:

"In the trial of all criminal cases, the jury shall be the judges of law, as well as of fact, except that at the conclusion of the evidence for the State a motion

---

5. Maryland District Rule 603 provides: "The clerk shall enter any judgment satisfied upon the order in writing of the holder of the judgment and shall file such order among papers in the action upon payment of costs. . .".

for judgment of acquittal on one or more counts, or on one or more degrees of an offense, may be made by an accused on the ground that the evidence is insufficient in law to justify his conviction as to any such count or degree. If the motion is denied, he may offer evidence on his own behalf without having reserved the right to do so, but by so doing, he withdraws his motion. The motion may be made at the close of all the evidence whether or not such motion was made at the conclusion of the evidence for the State. If the motion is denied the defendant may have a review of such ruling on appeal.

The function of the appellate court in reviewing such ruling is limited. It does not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, but merely ascertains whether there is any relevant evidence, properly before the jury, legally sufficient to sustain a conviction. *State v. Devers and Webster,* 260 Md. 360, 272 A.2d 794 (1971); Wilson v. State, 261 Md. 551, 276 A.2d 214 (1971); Cranford v. State, 36 Md. App. 393, 373 A.2d 984 (1977).

The history of the crime of perjury and the evidence necessary to sustain a conviction thereof is rather complex and convoluted. Indeed, according to Pollock and Maitland, "(v)ery ancient law seems to be not quite certain whether it ought to punish perjury at all. Will it not be interfering with the business of the gods?" [6] By the time of Coke, however, the crime was established and the elements well-defined:

"(t)he crime of wilful and corrupt *perjury;* which is defined by Sir Edward Coke, to be a crime committed when a *lawful* oath is administered, in some *judicial* proceeding, to a person who swears *wilfully, absolutely,* and *falsely,* in a matter *material* to the issue or point in question." [7]

*Code* (1982 Replacement Volume) Article 27, Section 435

6. *Pollock and Maitland, History Of The English Law,* 539 (2d Ed. 1911).
7. *4 W. BLACKSTONE Commentaries* * 137.

embodies the common law definition of perjury, and also enumerates specific instances that constituted the common law crime of false swearing. *Gatewood v. State,* 15 Md. App. 314, 290 A.2d 551 (1972). Perjury has been defined by Maryland courts to be committed when the following elements are met:

1. a lawful oath is administered;
2. in some judicial proceeding;
3. when a person swears wilfully, absolutely and falsely;
4. to a matter material to the issue or point in question.

*State v. Levitt,* 48 Md. App. 1, 426 A.2d 383 (1981). As defined above, it is declaratory of the common law to which Maryland residents become entitled by virtue of the *Declaration of Rights, Levitt, supra; Deckard v. State,* 38 Md. 186 (1873).

The quantum of proof necessary to sustain a conviction is not as easily defined, however. Judge Marbury, writing for the Court of Appeals in *Brown v. State,* 225 Md. 610, 171 A.2d 456 (1961), appears to have set forth the general standard applicable in Maryland today. He states at 616-617:

> "At common law it was originally held that to warrant a conviction of perjury the falsity had to be shown by direct and positive testimony of two witnesses. 7 Wigmore, *Evidence,* § 2040 (3rd ed. 1940). The rule has been said to be deeply rooted in past centuries having its inception in the Star Chamber. 7 *id.* §§ 2030 and 2044. Perjury was treated as a high misdemeanor which required a greater measure of proof than any other crime known to law, treason alone excepted.
>
> However, the rule has been relaxed so as to allow a conviction of perjury to stand if there are two witnesses, or one witness corroborated by circumstances proved by independent testimony. 41 Am. Jur., *Perjury,* § 67; 70 C.J.S., *Perjury,* § 68. The tes-

timony of one witness and other independent corroborative evidence must be of such a nature so as to be of equal weight to that of at least a second witness, thus foreclosing any reasonable hypothesis other than the defendant's guilt. *Weiler v. United States,* 323 U.S. 606; *United States v. Neff,* 212 F. 2d 297; *United States v. Nessanbaum,* 205 F.2d 93; 70 C.J.S. § 60. It has been held that circumstantial evidence, including documentary evidence, springing from the defendant himself, may take the place of a "living witness". *United States v. Wood,* 39 U.S. 430; *United States v. Palese,* 133 F.2d 600, *United States v. Nessanbaum, supra; United States v. Flores-Rodriguez,* 237 F.2d 405; *United States v. Spaeth,* 152 F. Supp. 216; *People v. Doody,* (N.Y.) 64 N.E. 807; *Metcalf v. State,* (Okla.) 129 P. 675; *Mallard v. State,* (Ga.) 90 S.E. 1044; *State v. Storey,* (Minn.) 182 N.W. 613; *State v. Cerfoglio,* (Nev.) 205 P. 791, and 213 P. 102; *Miles v. State,* (Texas) 165 S.W. 567; *Marvel v. State,* (Del.) 131 Atl. 317."

*Accord, State v. Devers and Webster, supra.*

While the direct and positive testimony of two witnesses was necessary at common law to sustain a conviction of perjury, it was not necessary at *early* common law. There was no such rule in use in common law courts until the first half of the Eighteenth Century. 7 *Wigmore, Evidence* § 2040 (Chadbourn rev. 1978). In 1640, the Court of the Star Chamber was abolished and its jurisdiction transferred to the King's Bench. Proceedings in the Star Chamber had always been conducted according to ecclesiastical or civil law. Ecclesiastical law required at least the direct and positive testimony of two witnesses in order to convict.[8] Since the crime

---

8. 2 Taylor on Evidence (6 Ed 1872) § 654, is quoted as saying: "In the Ecclesiastical Courts, the rule requiring a plurality of witnesses is carried far beyond the verge of common sense. According to the Canon Law, it seems that in the case of a Cardinal charged with incontinence, the *probatio,* in order to be *plena,* must be established by no less than seven eye-witnesses."

One may speculate that the rule possibly had its genesis in the law of Moses, where it is said: "At the mouth of two witnesses, or three witnesses,

of perjury had been prosecuted almost entirely in the Star Chamber, it follows that the rule requiring two witnesses accompanied the transfer of jurisdiction to the King's Bench. 7 *Wigmore, Id.* Since perjury was one of the few crimes in which the accused was allowed to testify, the rule gained acceptance in the common law court. If only one person's testimony was offered against the accused, the situation would present oath against oath, or a "draw". The quantitative theory of testimony, then, played a key role in the establishment of the rule. Professor Greenleaf recognized this principle in his *Treatise On The Law Of Evidence* (1842) at § 257:

> "In proof of the crime of perjury, also, it was formerly held, that two witnesses were necessary, because otherwise there would be nothing more than the oath of one man against another, upon which the jury could not safely convict."

The rule has been "relaxed" in most jurisdictions so as to allow a conviction to stand based on the testimony of one witness corroborated by circumstances sufficient to equal the weight of a second witness. This is what *Brown explicitly* states. Whatever purpose may have been served by the rule three hundred years ago, we agree with Wigmore that the rule is now "incongruous" in our present system of jurisprudence. 7 *Wigmore, Id.* at § 2041. As stated by Judge Thompson for this Court in *Tipton v. State,* 8 Md. App. 91, 99, 258 A.2d 606 (1969), while refusing to extend the rule to attempted subornation of perjury:

> ". . . This State permits the testimony of one witness to support convictions for the most serious crimes, *e.g.,* murder, *Rasnick v. State,* 7 Md. App. 564, 256 A.2d 543; rape, *Charles v. State,* 4 Md. App. 110, 241 A.2d 435; and armed robbery, *Carroll v. State,* 3 Md. App. 50, 237 A.2d 535. In the absence

shall he that is worthy of death be put to death; but at the mouth of one witness he shall not be put to death." *The Holy Bible,* King James Version; Deuteronomy, Chapter 17, Verse 6.

> of binding authority, we perceive no reason to apply
> the two-witness rule to any part of attempted
> subornation of perjury under the facts of the case at
> bar."

While the rule may continue to serve a practical purpose by preventing charges based solely on annoyance or retaliation, *Commonwealth v. Broughton,* 390 A.2d 1282 (Pa. 1978), we are not sure that this purpose outweighs the desirability of consistency in proofs for the various criminal offenses. *State v. Storey,* 148 Minn. 398, 182 N.W. 613 (1921).

In *Brown v. State, supra,* Rose Brown was convicted of perjury arising from testimony given in a civil case. Basically, Brown denied signing a confessed judgment note which was the subject of the civil proceeding. At the perjury trial, the State introduced the civil pleadings, the note and records and exemplars admittedly signed by Brown and used by a handwriting expert in his analysis. The handwriting expert testified that the signature appearing on the note and the signature on the other records and exemplars were one and the same. This was the substance of the State's case. Brown's motion for directed verdict was denied, and she presented evidence in her defense.

A motion for directed verdict was again denied at the close of the entire case. The Court of Appeals affirmed her conviction.

Judge Marbury cited numerous cases in the above-quoted passage in support of the proposition that "circumstantial evidence, including documentary evidence, springing from the defendant himself, may take the place of a 'living witness'." Several of the cases cited require a more detailed explanation of their holdings. In *People v. Doody,* 172 N.Y. 165, 64 N.E. 807 (1902), the New York Court held that where the subject matter of the falsity is insusceptible of direct proof, circumstances, in and of themselves, may be sufficient to sustain a conviction of perjury without regard to the two-witness rule. Two subsequent cases, *People v. Wright,* 214 N.Y.S. 2d 461 (1961) and *People v. Calandrillo,* 215 N.Y.S. 2d 355 (1961), expanded the New York rule so

that circumstantial evidence alone, *whether or not* the falsity is susceptible to direct proof, is enough upon which to base a conviction of perjury. See 88 ALR 2d 852, 873.

Similarly, in *Mallard v. State,* 19 Ga. App. 99, 90 S.E. 1044 (1916), the Georgia court, although the case is not reported in full, appears to have held that the two-witness rule is inapplicable "where proof of the crime is necessarily based on circumstantial evidence". In *Storey, supra,* the Minnesota court sets forth a well-reasoned discussion of the two-witness rule before rejecting its applicability to instances where the crime is proven by circumstantial evidence. The Court states in its consideration of the rule:

> "The question is a new one in this State, and we are at liberty to choose the rule which appeals to us as being more consonant with reason. Notwithstanding the high authority above cited, we are of the opinion that the rule (two witness rule) laid down is out of harmony with our system of jurisprudence ... We find ourselves unable to approve the doctrine that perjury is a more heinous crime than murder, or that one charged with perjury should have greater immunity than one charged with murder. Suppose, for example, the only eyewitness to a murder should testify that the accused is not the man who committed the crime, and yet the circumstantial evidence of guilt is so strong that the jury convicts of first degree murder. With what consistency can it be said that a quality of testimony which will justify a court in condemning a defendant to life imprisonment, or, in some jurisdictions, to be hanged, is insufficient to sustain a conviction of the falsifier of the crime of perjury, for which he may suffer a penalty of a short term of imprisonment? The lightness with which, we are pained to say, the oath of a witness is too often treated, does not warrant us in making conviction of the crime of perjury most difficult of all crimes of which state courts have jurisdiction. We hold that perjury may be proved by circumstantial

evidence, if proof is made beyond reasonable doubt, as in the case of other crimes. Nor is this doctrine without authority to sustain it. Ex parte Metcalf, 8 Okla. Crim. Rep. 605, 44 L.R.A. (N.S.) 513, 129 Pac. 675. See People v. Doody, 172 N.Y. 165, 64 N.E. 807, 15 Am. Crim. Rep. 675, holding that the old rule has no application where the proof of the crime is necessarily based on circumstantial evidence." 182 N.W. at 615.

While the situation confronted by the Nevada court in *State v. Cerfoglio,* 46 Nev. 332, 205 P. 791, *reconsidered* 213 P. 102 (1923), was somewhat different, the court intimated that where a "live" witness is presented, the rule may be applicable in order to prevent the "oath-against-oath" situation, but that where the State relies upon circumstantial evidence to secure a conviction, the circumstances must be inconsistent with the defendant's theory of innocence. In *Marvel v. State,* 33 Del. 110, 131 A. 317 (1925), the Delaware Court, although recognizing the weight of authority was against it, held that circumstantial evidence alone is sufficient to justify a conviction, without any direct and positive testimony.

These cases are all cited with approval in *Brown,* as well they should be, for a thorough examination of *Brown* reveals that the conviction was based solely on circumstantial evidence.

The language in *Brown* that "The testimony of one witness and other independent corroborative evidence must be of such a nature so as to be of equal weight to that of at least a second witness, *thus foreclosing any reasonable hypothesis other than the defendant's guilt",* (emphasis added) was, at that time, the evidentiary standard by which the legal sufficiency of the evidence was to be measured where proof of guilt was based solely on circumstantial evidence. *Vincent v. State,* 220 Md. 232, 151 A.2d 898 (1959); *Brown v. State,* 222 Md. 290, 159 A.2d 844 (1960); *Williams and McClelland v. State,* 5 Md. App. 450, 247 A.2d 731 (1968); *Ramsey v. State,* 5 Md. App. 563, 569, 248 A.2d 659 (1968).

In *Brown,* not one single witness testified directly and positively that he saw the defendant sign the note. There were handwriting samples to compare with the handwriting on the note. Further, there was the testimony from the expert witness that the signature on the note and the signature on the samples were the same. From this the jury could *infer* that the defendant signed the note, but there is no *direct* testimony that she did.

Although the circumstances may be stronger in *Brown,* the same principle applies here. Berry and Farber testified that they did not receive the checks appellant claimed to have sent them. The unsatisfied judgments from the District Court were entered into evidence, from which the jury could infer appellant knew they were unpaid. Further, as in *Brown,* the jury had the opportunity to observe appellant's demeanor and attitude on the stand, and could form its own opinion as to her veracity. *Brown, supra,* at 617. See 60 *Am. Jur. 2d,* Perjury § 64 (1972).

As set forth by this Court in *Nichols v. State,* 5 Md. App. 340, 247 A.2d 722, *cert. denied* 253 Md. 735 (1968) and further explained in *Metz v. State,* 9 Md. App. 15, 262 A.2d 331 (1970), *Streat v. State,* 11 Md. App. 543, 275 A.2d 537, *cert. denied* 262 Md. 750 (1971), and *Robinson v. State,* 18 Md. App. 678, 308 A.2d 734, *cert. denied* 269 Md. 765 (1973), a conviction based on circumstantial evidence requires no greater degree of certainty than one based on direct evidence. In either instance, the trier of fact must be convinced of defendant's guilt beyond a reasonable doubt. The State need not disprove every theory or hypothesis of innocence. Although there was no direct and positive testimony that appellant did not, in fact, send the checks to Berry and Farber, there was sufficient evidence from which the jury could find appellant's guilt beyond a reasonable doubt.

As stated by the Court of Appeals in *Brown* at 617:

"We need not undertake to determine what may be the proper rule today as to the quantum of proof of perjury which would be required in other circumstances. On the evidence in this case we hold that the . . . evidence [the Court of Appeals then reciting

the circumstantial evidence set out above] (was) all properly submitted to the jury for its consideration. In addition, the appellant testified in her own behalf and the jury was thus able to observe her demeanor on the stand and judge the credibility of her testimony. If the evidence offered was believed then the jury was entitled to conclude that appellant's testimony, under oath, — was wilful and false. —".

The mandate of *Brown* is clear. Pursuant to mandate, we explicitly hold that where the State produces and relies upon circumstantial evidence, that circumstantial evidence in and of itself may be sufficient for a conviction of perjury, and the two witness rule is not applicable. It remains for the Court of Appeals or the General Assembly to determine the continued validity of the rule in other circumstances.

## ISSUE IV

Appellant contends that Counts 3 and 4 should have been dismissed since they allege the same offenses as those charged in Counts 1 and 2. At the equity trial she testified on direct examination that she had sent checks to Berry and Farber. Counts 1 and 2 charge her with perjury for those statements. On cross-examination, appellant again asserted that she had sent the checks to Berry and Farber, giving rise to Counts 3 and 4. Appellant says the same lie told twice pursuant to one oath is one perjury. The State says the same lie repeated several times after one oath is several perjuries.[9] Neither of them cites any authority, each being content to rely on the general definition of perjury in *State v. Levitt, supra.*

There is a split of authority in jurisdictions which have considered the issue of whether several false statements made in the same proceeding constitute one perjury or several perjuries. Compare *Black v. State,* 13 Ga. App. 541, 79

---

**9.** The State is in error when it says the question was not raised below. Appellant moved at the beginning of the trial to dismiss Counts 3 and 4 as "repetitive". That motion was denied by the trial judge.

S.E. 173 (1913) and *State v. LaBarre,* 114 Ariz. 440, 561 P.2d 764 (1977). We have been referred to no Maryland case on point. It would appear that the gravamen of the offense is the false statement of the accused, not the oath that she takes, but we need not make that decision.

In imposing sentence in this case, the trial judge said, "(E)ach of these convictions arose out of the same civil proceedings and therefore the Court is running the Counts 2 through 4 concurrently with Count No. 1."

Under the concurrent sentence doctrine, "the existence of a valid concurrent sentence removes the necessary elements of a justiciable controversy." *Jennings v. State,* 8 Md. App. 312, 319, 259 A.2d 543 (1969). The error, if any, has caused no prejudice to the appellant. See *United States v. Lent,* 432 F.2d 440 (4th Cir. 1970); *Marks v. State,* 230 Md. 108, 185 A.2d 185, *cert. denied* 373 U.S. 918 (1962); *Thomas v. State,* 2 Md. App. 645, 236 A.2d 747, *cert. denied,* 249 Md. 733 (1967).

## ISSUE V

Appellant finally asks us to invoke the provisions of *Maryland Rule* 757 (h) and find plain error in the instructions to the jury that a verdict of either guilty or not guilty must be unanimous, despite the fact that she made no objection to those instructions as required by *Maryland Rules* 757 (f) and 1085.[10]

The instructions given were not error. They were entirely correct. *Coby v. State,* 225 Md. 293, 297, 170 A.2d 199 (1961); *McKay v. State,* 32 Md. App. 451, 362 A.2d 666 (1976), affirmed 280 Md. 558, 375 A.2d 228 (1977).

For the reasons stated:

*Judgment affirmed.*
*Appellant to pay the costs.*

---

**10.** Not only did appellant not object to the instruction; she requested it. Her Request for Instruction 6 asked the court to instruct the jury "that the verdict must be unanimous and that each juror must agree with the verdict of guilty or not guilty."