Roy R. WILLIAMSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 341, 1994.

Supreme Court of Delaware.

Submitted: Sept. 19, 1995.
Decided: Oct. 25, 1995.

Bernard J. O'Donnell (argued), and Karl Haller, Assistant Public Defenders, Wilmington, for Appellant.

Gary A. Myers, Deputy Attorney General, Georgetown, for Appellee.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

VEASEY, Chief Justice:

In this appeal, we consider the contention of defendant below-appellant, Roy R. Williamson ("Williamson"), that the Superior Court erred in finding him guilty of the crime of first degree felony murder despite the absence of sufficient evidence to establish the elements of that crime as defined by 11 Del.C. § 636(a)(2). Williamson challenges only his conviction for first degree felony murder, one of the two murder convictions for which he now serves life in prison without possibility of parole. The crux of Williamson's argument is that the prosecution failed to prove beyond a reasonable doubt that the murder of Nemours Theus was committed by Williamson during "immediate flight" from the predicate felony of sexual assault.

■ In reviewing Williamson's claim, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, Del.Supr., 539 A.2d 164, 168 (1988) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We conclude that the State has not met its burden of proof. Accordingly, we reverse the felony murder judgment of the Superior Court. Williamson's conviction and sentence for first degree intentional murder and other crimes still stand unaffected by this reversal.

The State argues that we should not disturb the felony murder conviction even if erroneous in view of the fact that the intentional murder and other convictions and sentence stand. This argument is advanced on the ground that the "concurrent sentence doctrine" should be applied as a discretionary bar to reversal of the erroneous felony murder conviction. We hold that the doctrine is not applicable or appropriate to be applied here. Accordingly, we reject the State's contention to the contrary.

## I. FACTS

Prior to the series of tragic events which provide the subject matter of this appeal, Williamson resided in an apartment in Laurel, Delaware. Williamson shared the apartment with his wife, his wife's daughter, and a number of other individuals to whom Williamson's wife had sublet portions of the apartment. Among these boarders were a young woman ("victim"), who was enrolled as a part-time student, and Nemours Theus, the decedent. Apparently, the residents of the Laurel apartment coexisted peacefully until one fateful day in May of 1993.

At approximately 1:45 p.m. on May 3, 1993, Williamson entered the victim's room where he struck the young woman, subdued her and bound her to a bed with lengths of window cord and electrical wire. Williamson removed the young woman's clothing and, after

two unsuccessful attempts, proceeded to sexually assault her. During the course of the rape, Williamson communicated to the victim that he planned to kill Nemours Theus, a fellow boarder in the Laurel apartment, upon Mr. Theus' return.

Subsequently, Williamson heard an individual entering the apartment causing him temporarily to leave the victim's room. Moments later, the victim heard what seems to have been the sound of Mr. Theus striking the floor, having been physically accosted by Williamson. The young woman's fears were confirmed when Williamson reappeared, dragging Theus behind him. Theus, still gagging from the blow Williamson had dealt him, was left bound and incapacitated next to the victim. Williamson then left the room again. Upon his return, Williamson set out brutally to implement his plans. Placing his foot on Theus' head, Williamson pulled with increasing force on the rope encircling his victim's neck. As the horrified victim looked on, Williamson continued to pull the rope until Theus expired.

Having brought his murderous plans to fruition, Williamson calmly proceeded ·to the front door of the apartment to greet his wife, as she returned from a physician's appointment. Williamson's wife then left her granddaughter in Williamson's care while she went to the store. Upon her return, Williamson borrowed his wife's car so that he might visit his employer. Some time after Williamson left the apartment, the victim freed herself and crawled out on the building's roof to summon help. Police discovered the lifeless body of Theus and began to search for his assailant. Williamson was captured shortly thereafter as he returned to the Laurel apartment in his wife's car.

Trial was held in the Superior Court, where the jury found Williamson guilty of first degree intentional murder, first degree felony murder, two counts of first degree unlawful sexual intercourse, one count of kidnapping, one count of unlawful sexual penetration and one count of third degree assault. For the murder counts, Williamson was sentenced to two consecutive life terms of imprisonment without possibility of parole. For the various other offenses, Williamson was sentenced to an aggregate of 121 years in prison to be served consecutively and without the possibility of parole.

## II. INSUFFICIENCY OF THE EVIDENCE

Williamson's sole assignment of error in this appeal is that the State offered insufficient evidence at trial to establish beyond a reasonable doubt the elements of the crime of felony murder as charged. The essence of Williamson's argument is that the State has not shown that the murder of Nemours Theus occurred while Williamson was in "immediate flight" from the commission of the predicate felony of sexual assault.

■ Under 11 *Del.C.* § 636(a)(2), a defendant may be convicted of felony murder in the first degree if, "[i]n the course of and in furtherance of the commission or attempted commission of a felony *or immediate flight therefrom,* he recklessly causes the death of another person." (Emphasis added). In drafting Williamson's indictment, the State charged the appellant with only the latter portion of the statute dealing with immediate flight.[1] As Williamson correctly points out, the language of the indictment added the additional element of immediate flight to the list of elements that the State was required to prove. Thus, having indicted the defendant for a specific facet of the felony murder statute, the State was then required to prove beyond a reasonable doubt the elements of the offense charged.

■ The State now argues that the prosecutor, relying on the disjunctive language of the statute ("commission ... of a felony *or* immediate flight therefrom"), thought that he must select one of the two prongs of the statutory language. The State argues on appeal, however, that this precision in timing was not necessary. The State urges that, if Williamson is guilty of either facet of the statute, he should be found guilty under the

---

1. Count Two of Williamson's indictment stated only that he "did recklessly cause the death of Nemours Theus, *during the immediate flight* from the commission of ... a felony." (Emphasis added.)

indictment as drafted. This argument is unavailing. The purpose of the indictment is to give the accused notice of the offenses with which he is charged. The State cannot now be heard to complain because it failed to draft the appropriate language in Williamson's indictment.

In discharging its appellate function, this Court must determine whether any rational trier of fact could reasonably find that the element of "immediate flight" was proved by the State beyond a reasonable doubt. The meaning of the relevant statutory language must first be ascertained. The term "immediate flight" is not defined in the statute, and Delaware case law provides no specific interpretation of the language. Thus, this case presents a question of first impression.

■ The statutory language is clear and unambiguous. The term "immediate" is defined as meaning: "occurring or accomplished without delay; instant ... following or preceding without a lapse of time." *Random House Unabridged Dictionary* 956 (2d ed. 1993). The term "flight" is similarly unambiguous. "Flight" is defined as "an act or instance of fleeing or running away." *Id.* at 734. Taken together, the import of the statute is clear: The death must have occurred as the accused *fled* the scene of the predicate felony and *immediately* after the commission of that felony.

The statutory language, therefore, suggests a situation where the accused is actively fleeing the scene of the crime and causes the death of another in furtherance of or by virtue of the escape. Williamson's actions are not consistent with those of a man attempting to flee a murder scene. Moreover, Theus' death clearly did not occur in furtherance of or by virtue of an escape attempt. To say that Williamson intended to flee later is unavailing. The statute contemplates a situation where the death giving rise to the felony murder charge occurs during flight, not prior to flight.

■ Neither facet of the statutory "immediate flight" language is supported by the record. Evidence adduced at trial shows that, after killing Theus, Williamson went to the entryway of the household to greet his wife who had returned from a doctor's appointment. His wife then left her granddaughter in Williamson's care. Williamson watched the child for a period of time, during which he also returned to the scene of the sexual assault and tightened the ropes that were holding the victim. Upon his wife's return, Williamson borrowed her car to visit his employer. Having visited the employer, Williamson was returning to the crime scene when he was apprehended by the police. These actions do not support the charge of immediate flight set forth in the statute.

The evidence offered at trial does not support a guilty verdict under the statute. Accordingly, we reverse Williamson's conviction for first degree felony murder. As noted, Williamson's other conviction for murder remains in effect.

## III. THE "CONCURRENT SENTENCE DOCTRINE"

Having considered Williamson's claims for relief, the Court must now address an additional contention argued by the State on appeal. The State urges that this Court adopt the "concurrent sentence doctrine" as a discretionary bar to Williamson's appeal. Since Williamson is currently serving a life sentence without possibility of parole on a separate intentional murder conviction, as well as 121 consecutive years of imprisonment for other crimes, the State argues that any appellate relief afforded by this Court on the felony murder conviction would have a superficial impact at best. Therefore, the State contends, the Court should deny Williamson's appeal in the interest of judicial economy.

■ Although not previously recognized in Delaware, the concurrent sentence doctrine has found favor (where applicable) in the courts of some other states as well as in the federal courts. The doctrine is applied not as a matter of procedure or jurisdiction, but rather at the discretion of the court. *See, e.g., Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969). One commentator has described the import of the doctrine as follows:

The concurrent sentence doctrine provides that once a reviewing court has affirmed a conviction and sentence in an appeal brought by a defendant in a criminal case, the court need not consider the defendant's challenge to any convictions on additional counts which bear concurrent sentences of the same or a lesser term.

Anne S. Emmanuel, *The Concurrent Sentence Doctrine Dies a Quiet Death—Or Are the Reports Greatly Exaggerated?*, 16 Fla.St. U.L.Rev. 269 (1988) ("Emmanuel").

■ As noted, this Court has not heretofore recognized the concurrent sentence doctrine. For the reasons enumerated below, we do not find it applicable or appropriate in the case at bar. Accordingly, we decline to adopt the doctrine in this case. First, the sentences here were not concurrent; they were consecutive. Second, the future effects of affording appellate relief to Williamson are not now clear. Although it appears that reversal of Williamson's conviction will have only a nominal impact at present, the future is unknown. A situation may arise where Williamson's additional conviction could act as an impediment to clemency or a pardon. Further, Williamson's conditions of imprisonment may be more harsh if he is known by prison authorities to have been convicted of two counts of murder rather than one. Of course, the foregoing is mere speculation, but the same may equally be said of the State's view that Williamson's improper felony murder conviction will not have any appreciable effect on his future.

More significantly, the Court holds that justice requires reversal of Williamson's conviction. Judicial economy is not a valid reason for the Court to deviate from the path of justice. To allow an accused to remain guilty and sentenced for a crime when the evidence proffered by the State does not support that conviction runs counter to notions of justice and fairness. The Court is not so overburdened that it can now turn a blind eye to the mandate of justice in the interest of expediency or judicial economy.

Finally, Williamson's case is before this Court on direct appeal. The concurrent sentence doctrine has been recognized by only one state in the direct appeal context, *Jacobs v. State*, Fla.Dist.Ct.App., 389 So.2d 1054, 1056 (1980). When applicable, it is generally applied in the context of a claim for postconviction relief. *See, e.g., Williams v. Maggio*, 5th Cir., 714 F.2d 554 (1983) (denial of habeas corpus petition); *see also Benton*, 395 U.S. at 793 n. 11, 89 S.Ct. at 2062 n. 11 ("stronger case for total abolition of the concurrent sentence doctrine may well be made in cases on direct appeal, as compared to convictions attacked collaterally by suits for postconviction relief").

The concurrent sentence doctrine is not widely recognized. It is applied, at most, intermittently. The courts of only five states—Maryland,[2] Missouri,[3] Washington,[4] Wyoming,[5] and Florida [6]—have recognized the doctrine. The federal courts have a checkered and splintered record with respect to application of the doctrine. *See, e.g., United States v. Hooper*, D.C.Cir., 432 F.2d 604, 606 (1970) (holding that neither government nor public has significant interest in expending resources on counts rendered "superfluous" by concurrent sentences); *but see United States v. De Bright*, 9th Cir., 730 F.2d 1255, 1257 (1984) ("[v]acating unreviewed sentences under the concurrent sentence doctrine is a fundamentally erroneous practice").[7]

---

2. *Smith v. State*, Md.Ct.Spec.App., 51 Md.App. 408, 443 A.2d 985, 995 (1982).

3. *State v. Neal*, Mo.Ct.App., 661 S.W.2d 844, 845 (1983).

4. *State v. Briceno*, 33 Wash.App. 101, 651 P.2d 1093, 1094 (1982). *But see State v. Birgen*, 33 Wash.App. 1, 651 P.2d 240, 242 (1982) (concurrent sentence doctrine criticized and mainly limited to multiple punishments under double jeopardy).

5. *Driskill v. State*, Wyo.Supr., 761 P.2d 980, 983 (1988).

6. *Jacobs v. State*, Fla.Dist.Ct.App., 389 So.2d 1054, 1056 (1980).

7. The Court of Appeals for the Third Circuit has rarely applied the doctrine, finding in many instances that the application of the doctrine was not economical, or that an appreciable risk to the defendant existed. Emmanuel, *supra*, at 286.

Although we now decline to adopt the concurrent sentence doctrine, we do not foreclose the possibility that instances may arise in the future where the purely nominal impact of affording appellate relief may result in an application of the doctrine.[8] But we leave that decision to another day.[9] Accordingly, we deny the State's request to forego appellate relief on the basis of the concurrent sentence doctrine in this case.

## IV. CONCLUSION

Williamson's conduct, as found in this case, is plainly of the most reprehensible sort. His crimes shock the conscience of the Court. Nevertheless, as a matter of law, the evidence adduced at trial does not adequately establish the elements of one of the murder offenses with which Williamson was charged. Williamson clearly belongs in prison, and, as a result of the numerous other charges on which the jury convicted him (including murder), he has been sentenced to remain there for the rest of his life. To sustain the conviction for the felony murder charge in these circumstances, however, would do violence to the language of the statute and create a confusing and erroneous precedent.

Therefore, we now hold that the State did not meet its burden of proof in demonstrating the elements of felony murder as defined in 11 *Del.C.* § 636(a)(2). We further hold that the concurrent sentence doctrine is not applicable or appropriate for recognition here. Accordingly, we **REVERSE** the defendant's conviction for first degree felony murder. The remaining convictions and judgments of the Superior Court remain unaffected by this decision.

---

**8.** For instance, this Court has declined review for "mootness" in cases where the defendant dies during the appeals process, *Perry v. State*, Del. Supr., 575 A.2d 1154, 1155–56 (1990), or where the defendant has already served his sentence for the conviction appealed from, and no "direct harm" or "collateral consequences" would "permit him to obtain a review or institute a challenge," *Gural v. State*, Del.Supr., 251 A.2d 344, 344–45 (1969).

**9.** *See Paramount Communications, Inc. v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34, 51 (1994) ("It is the nature of the judicial process that we decide only the case before us . . .").